**Cecil C. JÓHNSON, Jr., Appellant,**

v.

**STATE of Tennessee, Appellant.**

Supreme Court of Tennessee,
at Nashville.

Sept. 4, 1990.

Rehearing Denied Oct. 22, 1990.

Charles Burson, Atty. Gen. & Reporter, Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, for State's appeal.

James F. Sanders, James G. Thomas, George H. Cate, III, Neal & Harwell, Nashville, for Johnson's appeal.

## OPINION

O'BRIEN, Justice.

This post-conviction proceeding is before the Court on joint applications for permission to appeal from the judgment of the Court of Criminal Appeals. The State takes issue with that court's judgment ruling that the prosecuting attorney's argument at trial was violative of the Eighth Amendment and whether or not the defendant waived any right to post-conviction relief on his claim of prosecutorial misconduct. The defendant-petitioner has raised twenty-six (26) issues about equally divided between the guilt phase at trial and the sentencing proceeding.

On 19 January 1981 petitioner was found guilty in a jury trial on three (3) counts of first degree murder; two (2) counts of assault with intent to commit murder, and one (1) count of armed robbery. He was sentenced to death by the jury on each of the first degree murder charges and received consecutive life sentences on each of the other charges. On 3 May 1982 this Court affirmed the convictions and sen-

tences imposed upon the petitioner.[1] A petition to rehear was denied on 21 May 1982. On 4 October 1982 the United States Supreme Court denied a petition for writ of certiorari. A petition to rehear in that court was denied on 28 October 1982. This petition for post-conviction relief was filed on 15 March 1983 and denied after an evidentiary hearing. The petitioner here appealed the trial court judgment to the Court of Criminal Appeals which on 20 January 1988 affirmed, in part, and reversed in part, the judgment of the trial court dismissing the petition for post-conviction relief. The intermediate court set aside the death sentences imposed in the trial court and remanded the case for a new sentencing hearing on the first degree murder sentences.

We first address the Court of Criminal Appeals judgment remanding the case for a new sentencing hearing. We reverse that court's judgment and reinstate the sentences imposed in the trial court.

The State of Tennessee, appellant here, citing *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985),[2] argues that the Court of Criminal Appeals erred in its holding that defendant did not waive any right to post-conviction relief by his failure to attack the prosecuting attorney's arguments on the basis raised here, either at trial or on direct appeal from his conviction. Moreover, they say he failed to allege any reason for his failure to assert this issue at the appropriate time in the prior proceedings. They further argue that defendant has not shown that *Caldwell*, supra, created a new constitutional right which must be applied retroactively.

In reference to the procedural waiver of the *Caldwell* issue due to the defendant's failure to raise it at trial or on direct appeal

the intermediate court held that the essential nature of the problem was discussed in the petition for post-conviction relief, even in advance of the opinion in *Caldwell*. They expressed their agreement with the 10th Circuit Court of Appeals decision in *Dutton v. Brown*, 812 F.2d 593, which involved federal habeas corpus jurisdiction. In the *Dutton* case the court discussed *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 2911, 82 L.Ed.2d 1 (1984). In *Reed* the court ruled that cause existed for defense counsel's failure to raise an issue when a subsequent Supreme Court decision articulated a constitutional principle not previously recognized. The Court of Criminal Appeals then ruled that this novel-issue principle is equally applicable in State post-conviction litigation. They reversed the judgment of the trial court denying relief on the sentence imposed and remanded the case for a new penalty hearing.

T.C.A. § 40–30–105 expressly provides for relief when grounds stated in a post-conviction petition were not recognized as existing at the time of conviction and require constitutional retrospective application.

T.C.A. § 40–30–112 defines when a ground for relief is previously determined or waived. In the former, a ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. Waiver is implied if a petitioner knowingly and understandingly fails to present a ground of relief for determination in any proceeding before a court of competent jurisdiction in which the grounds could have been presented. A rebuttable presumption arises that a ground for relief not raised in any such proceeding has been waived.

1. *State v. Johnson,* 632 S.W.2d 542 (Tenn.1982).

2. *Caldwell* was a case on direct appeal from a capital murder conviction and death sentence in the State of Mississippi. On certiorari the United States Supreme Court held that the Eighth Amendment prohibits the imposition of a death sentence by a sentencer that has been led to believe that the responsibility for determining the appropriateness of defendant's capital sentence rests elsewhere. The sentence of death was vacated, the judgment was reversed to the

extent it sustained the imposition of the death penalty, and the case was remanded for further proceedings. Subsequently a second petition for certiorari was granted and the entire judgment was vacated and the case remanded to the Supreme Court of Mississippi for further consideration in light of *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) and *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986).

We do not agree with the State's argument that *Caldwell,* supra, did not create a new constitutional right, nevertheless there is no constitutional mandate which either prohibits or requires retrospective effect. See *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965). More recently, United States Supreme Court decisions indicate the intent that new rules for conduct of criminal prosecutions are to be applied retroactively to all cases, State or Federal, *pending on direct review which are not yet final.* See *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). In *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989) the Court adopted a specific view on retroactivity for cases on collateral review, holding that unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.[3]

In deciding against retroactive application in this case we are not unmindful of the court's admonition in *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976), that the penalty of death is qualitatively different from a sentence of imprisonment and because of that difference there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case. If constitutional error occurred it would require appropriate palliative response. However, the appellate courts of this State may notice plain error at any time, at any stage of the proceedings, where necessary to do substantial justice. Tenn.R.Crim.P. 52. We have examined this record carefully. We do not find, as did the intermediate court, that State's counsel, in their statements to the jury at the sentencing hearing, attempted to minimize the jury's degree of responsibility in the sentencing decision or that the jurors themselves were not solely responsible for authorizing imposition of the death penalty.[4]

That portion of the District Attorney's opening statement and final argument which the lower court found constitutionally offensive is as follows:

"Your issue today is whether Cecil Johnson should experience the death penalty. Now in order to arrive at that and we (sic) and we asked you, if you will recall on the voir dire and the judge will explain to you and I am satisfied the defense will, you also have the option of life imprisonment on those three murders. Those are your two options. That is all you have got to debate. You can, you can vote to [have] him executed— *now incidentally it is not you doing that.*

*You are representing the reflective judgment, as I have already said, of the people of Tennessee and of the Supreme Court.* Or you can sentence him to life imprisonment. (Emphasis in Court of Appeals opinion).

The Court of Appeals also found a part of the prosecution argument to be an attempt to minimize the jury's degree of responsibility in the sentencing decision:

*The jury is but one step in the process.* The Legislature, as General Shriver spoke earlier, has enacted the death penalty, has put that into the body of the law in Tennessee, said that it is applicable in first degree murder cases. It set forth under what circumstances and how the death penalty should be considered and whether or not it will be imposed. And certainly the jury is, is part of that system. *But it is just part of a process of determining what is the proper appropriate punishment for, in this case, Cecil Johnson.* For his responsibility for three, three separate first degree murders. (Emphasis in Court of Appeals opinion).

That portion of the District Attorney General's opening statement which preced-

---

3. *See Penry v. Lynaugh,* 492 U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) and *Sawyer v. Smith,* —— U.S. ——, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).

4. The entire opening statement and closing argument of State's counsel is appended to this opinion as an appendix.

ed the remarks found objectionable by the Court of Appeals is as follows:

May it please the court, and ladies and gentlemen, you have found Cecil Johnson guilty of murder in the first degree. As we explained when we were questioning you, when you were picked, this is a two-part process. Now your job is to decide what his punishment should be on those charges, the three, three sentences of, or the three charges of murder in the first degree. Now, I think the first thing you need to keep in mind is that the debate here is not whether there ought to be a death penalty. That has already been decided. The United States Supreme Court has decided that. The Tennessee State Legislature which represents the people, and therefore the collective judgment of the people in Tennessee and in Davidson County, the Tennessee State Legislature said there is a death penalty available as a punishment for murder in the first degree. So you are not debating whether there ought to be a death penalty in general.

The part of the closing argument, coming before and after the portion excerpted by the lower court as improper, contains a great deal more to enable a reviewing court to determine if the argument falls short of appropriate constitutional standards:

Ladies and gentlemen of the jury, we are once again at a point of argument. We are, however at the sentencing stage as I know all of you are well aware. It is though, what is at least terms (sic) in the statute as argument. As far as I am concerned at this point though I think that what we are in a position of doing is really trying to, what I hope to do is not much argument and more of a discussion with regards to the duties and responsibilities that all of you as jurors are now facing.

When you were called in originally and individually voir dired and asked questions, one of the things, probably the most important thing that you were questioned about by both sides were your feelings about the death penalty. Certainly that is something that before you entered into this courtroom you had thoughts about, you had perhaps discussed, but you had never been in a situation in Court where the death penalty would necessarily be a reality.

If nothing more, we I am sure conveyed to you that this case was, of course, important, and, of course, significant but in addition we conveyed to you that any decision made in this case was not going to be an easy one regardless of what the proof was, regardless of how the evidence came out from that witness stand, the ultimate decisions that you had to make as jurors were going to be difficult ones. And they are made all that much more difficult by the fact that the death penalty is involved.

Now, all of you said at the beginning that you could consider the death penalty and that is all that we ask of you, is to consider the death penalty as it is set forth in the statute, because in order for you to take the oath that the Court administered to you, you had to be able, you had to be in a position to say that you could consider the law as it is in Tennessee. That you could make a true determination in this case according to the law and evidence. And that is what we are down to now. We are past the stage of guilt. We are past the question of guilt. Guilt has been resolved and determined by the jury yesterday afternoon, yesterday evening. In that resolution as you all remember, you found the defendant guilty of first degree murder. Not in one case, or not in one instance, but in three. And your function now has to do with taking those three situations, those three victims, the cases involving those three people and determining whether or not the law dictates that the death penalty shall be imposed. I will be very frank with you that you have convicted the defendant, he already, (sic) you have already given him a considerable period of time and certainly the easiest decision perhaps confronting the jury is to simply conclude that a life sentence on these three murders is what is justified.

While that may be the easiest decision, the question you as individual jurors

must ask yourself is how does that fit with what the law says, with what the law is in this State. That's what we are here about. That's what, that's what our entire argument here is about. Is looking at the law in the State of Tennessee and what do you as a juror, as a body, as jurors, what do you do?

.    .    .    .    .

Again, I can't emphasize enough that your situation is going to be unusual in the sense that you are going to have to, to (sic) assess the possibility, the punishment possibilities as to three victims. Not one, but three. Any one of these individuals, Little Bob, James Moore, Charles House, any one of them, their deaths, just their single death alone would be enough for this jury here to be considering and pondering whether or not a life sentence or whether it is death by electrocution....

Ladies and gentlemen, the court will define for you the law in this particular case. It will set out the formula that you need to, (sic) to apply, how you must go about assessing what is the proper punishment.

Both in the opening statement and in the closing argument a great deal more was said to define, explain, and discuss aggravating circumstances and mitigating circumstances and the jury's duty in reference to the consideration of each. In the closing argument the prosecutor also reviewed the evidence and the circumstances of the homicides for which defendant had been convicted.

The trial judge instructed the jury that statutory law required them to fix the punishment after a separate sentencing hearing to determine whether the defendant should be sentenced to death or life imprisonment and that their verdict must be unanimous as to either form of punishment. He instructed them on their duty to consider both aggravating and mitigating circumstances in accordance with statutory law on the subject.

Taking all of the foregoing in context, there is no possibility that the sentencing jury was led to believe that responsibility for determining the appropriateness of a death sentence rested not with them or suggested in any way that they might shift their sense of responsibility to an appellate court. Neither the opening statement nor the closing argument contained any such message to the jury. We find considerable ambiguity in the inference made by the Attorney General that the United States Supreme Court had decided there ought to be a death penalty. But, in the light of the balance of his statement, we do not find that remark to fail the scrutiny of the capital sentencing determination required under the Eighth Amendment.

The defendant's application for appeal includes twenty-six issues. The majority of these were considered on direct appeal [5] and, therefore, have been previously determined. Others have been waived by failure to present them at trial or on direct appeal. T.C.A. § 40–30–112. We have granted the application to consider the intermediate appellate court's treatment of the issues. We now find that they were properly reviewed, considered and dealt with appropriately.

The judgment of the Court of Criminal Appeals reversing the trial court and remanding for a new sentencing hearing is reversed. The judgment of the trial court is reinstated and affirmed. In all other respects, the judgment of the Court of Criminal Appeals is affirmed. Costs are assessed against the defendant.

FONES, COOPER and HARBISON, JJ., concur.

DROWOTA, C.J., files separate concurring opinion.

### APPENDIX

### OPENING STATEMENT OF STATE'S COUNSEL

THE COURT: All right, are there any opening statements?

---

**5.** *State v. Johnson,* supra.

MR. SHRIVER: Yes, if Your Honor please.

May it please the Court, and ladies and gentlemen, you have found Cecil Johnson guilty of murder in the first degree. As we explained when we were questioning you, when you were picked, this is a two part process. Now your job is to decide what his punishment should be on those charges, the three, three sentences of, or the three charges of murder in the first degree. Now the, I think the first thing you need to keep in mind is that the debate here is not whether there ought to be a death penalty. That has already been decided. The United States Supreme Court has decided that, The Tennessee State Legislature which represents the people, and therefore the collective judgment of the people in Tennessee and in Davidson County, the Tennessee State Legislature has said there is a death penalty available as a punishment for murder in the first degree. So you are not debating whether there ought to be a death penalty in general.

Your issue today is whether Cecil Johnson should experience the death penalty.

Now in order to arrive at that and we asked you, if you will recall on the voir dire and the Judge will explain to you and I am satisfied the defense will, you also have the option of life imprisonment on those three murders. Those are your two options. That is all you have got to debate. You can, you can vote to him executed—now incidentally it is not you doing that. You are representing the reflective judgment, as I have already said, of the people of Tennessee and of the Supreme Court. Or you can sentence him to life in prison. In order to arrive at that judgment, you have to weigh certain things.

The statute says that the State must prove at least one aggravating circumstances. Now, that is sort of a strange concept. What it means is we have got to show something about this case and there is a list of them in the book here, we have got to show that there is something about this case that fits in one of several categories that make it worse than, and I don't know that it is fair to say there is an ordinary garden variety murder, but that it is worse than an ordinary murder. Those are the aggravating circumstances. Now we have to prove at least one of those.

Then the defendant will undertake to convince you that there are mitigating circumstances. Something that overcomes the bad things about this case which should cause you to determine not to impose the death penalty.

Now, the, the aggravating circumstances that we expect to rely on are these three: first that the defendant knowing created a great risk of death to two or more persons other than the victim murdered during his actual murder. We have already shown you, there wasn't just one murder, there were three murders. Moreover, there was a risk of great bodily harm to two or more other persons, Lewis Smith and Bob Bell, Sr. But for the grace of God they would be dead too. Bad aim is about the only thing that makes them alive today. So there was a substantial risk of bodily harm or death to two other persons.

The second aggravating circumstance we expect to rely on is this. That the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest for prosecution of the defendant or another. All the proof has made it quite clear here, that the purpose of these murders was to avoid identification, arrest and prosecution. They were utterly senseless except in that, in that context. There was no purpose for these murders. They were utterly willful, wanton and wasteful murders except for the purpose that he, he engaged in them and that was to avoid being identified, avoid being arrested, avoid being prosecuted.

Finally, the third aggravating circumstance that we expect to rely on is that the murder was committed while the defendant was engaged in committing a robbery. The proof has clearly shown that. He was found guilty of robbery. Those are the three statutory aggravating circumstances which we say justify your consideration of the death penalty.

Now the defendant will put on proof of the mitigating circumstances. Things that they say weigh against that. Now, I have looked at the list here and there are only two that I can conceive of having any relation to this defendant. One is that he had no significant history of prior criminal activities. The other is the youth of the defendant at the time of the crime.

Well, in the first one, no prior criminal acts. It seems to me there is no reason to even consider that as a mitigation in view of the enormity of the crime committed here. The second, his youth, he is twenty-four years old, that's not so youthful. I have assumed that that meant to apply to some juvenile or very young defendant.

Also, the defense is entitled to put on evidence of his character, and I am reading from the statute, his character, background, history, physical condition and any evidence tending to establish or rebut the aggravating circumstances.

I don't know how to predict exactly what those are going to be. I am sure you are going to hear from people who think or thought before this happened that he was a good fellow. He may have been a good fellow. He may have been a pleasant man. But consider, keep in your mind, what he did here.

Now, the State is not going to put on any proof at this time, because we feel that we have already proved the aggravating circumstances that I have already mentioned, in the way that I have already stated to you. We have proved, we have proved to you through witnesses here in Court that he created the risk to two other people, that he did it to avoid arrest and conviction and that he did it in the course of a robbery. We therefore are relying on all of the witnesses who have already testified and ask that you incorporate and that the record show that their testimony in the guilt phase of this trial be incorporated by reference and included in the sentencing phase.

THE COURT: All right. Mr. Engle.

## CLOSING ARGUMENT OF STATE'S COUNSEL

(Whereupon the jury returned to open court and the following proceedings were had in its presence:)

THE COURT: All right.

MR. JOHNSON: Ladies and gentlemen of the jury, we are once again at a point of argument. We are, however, at the sentencing stage as I know all of you are well aware. It is though, what is at least terms in the statute as argument. As far as I am concerned at this point though I think that what we are in a position of doing is really trying to, what I hope to do is not much argument and more of a discussion with regard to the duties and responsibilities that all of you as jurors are now facing.

When you were called in originally and individually voir dired and asked questions, one of the things, probably the most important thing that you were questioned about by both sides were your feelings about the death penalty. Certainly that is something that before you entered this courtroom you had thoughts about, you had perhaps discussed, but you had never been in a situation in Court where the death penalty would necessarily be a reality.

If nothing more, we I am sure conveyed to you that this case was, of course, important, and, of course, significant but in addition we conveyed to you that any decision made in this case was not going to be an easy one regardless of what the proof was, regardless of how the evidence came out from that witness stand, the ultimate decisions that you had to make as jurors were going to be difficult ones. And they are made all that much more difficult by the fact that the death penalty is involved.

Now, all of you said at the beginning that you could consider the death penalty and that is all that we ask of you, is to consider the death penalty as it is set forth in the statute, because in order for you to take the oath that the Court administered to you, you had to be able, you had to be in a position to say that you could consider the law as it is in Tennessee. That you could make a true determination in this case according to the law and evidence.

And that is what we are down to now. We are past the stage of guilt. We are past the question of guilt. Guilt has been resolved and determined by the jury yesterday afternoon, yesterday evening. In that resolution as you all remember, you found the defendant guilty of first degree murder. Not in one case, or not in one instance, but in three. And your function now has to do with taking those three situations, those three victims, the cases involving those three people and determining whether or not the law dictates that the death penalty shall be imposed. I will be very frank with you that you have convicted the defendant, he already, you have already given him a considerable period of time and certainly the easiest decision perhaps confronting the jury is to simply conclude that a life sentence on these three murders is what is justified.

While that may be the easiest decision, the question you as individual jurors must ask yourselves is how does that fit with what the law says, with what the law is in this State. That's what we are here about. That's what, that's what our entire argument here is about. Is looking at the law in the State of Tennessee and what do you as a juror, as a body, as jurors, what do you do? The jury is but one step in the process. The Legislature, as General Shriver spoke earlier, has enacted the death penalty, has put that into the body of the law in Tennessee, said that it is applicable in first degree murder cases. It set forth under what circumstances and how the death penalty should be considered and whether or not it will be imposed. And certainly the jury is, is part of that system. But it is just part of a process of determining what is the proper appropriate punishment for, in this case, Cecil Johnson. For his responsibility for three, three separate first degree murders.

Again, I can't emphasize enough that your situation is going to be unusual in the sense that you are going to have to, to assess the possibility, the punishment possibilities as to three victims. Not one, but three. Any one of those individuals, Little Bob, James Moore, Charles House, any one of them, their deaths, just their single death alone would be enough for this jury here to be considering and pondering whether or not a life sentence or whether it is death by electrocution.

Now, what the Legislature has done, the Judge will instruct you, is really taken I think a common sense approach to the punishment phase. All of you were questioned by both sides about the death penalty, and more importantly you were questioned about, I recall that many of you were asked, well do you consider the death penalty a punishment—would you consider the death penalty a punishment in all types of murder cases? And I think everyone said no, no, I can't go that far, I wouldn't go that far. Well, what the Legislature has done is more or less agreed with exactly that kind of thinking. The Legislature has acknowledged that the death penalty is really a punishment only available first of all, just first of all, in cases of first degree murder and it is, as in this situation, where that murder is premeditated and we have been through all that before. But, just that fact alone, just the fact alone that the case is premeditated, would not necessarily mean that the death penalty automatically must follow. That once premeditated murder has been established, that the death penalty shall be imposed. Because the Legislature said that there are certain things that are, you might call aggravating circumstances or aggravating factors, things that take an already serious crime and make it that much worse. By the same token it recognized that there may be things that mitigate the crime. Either mitigate the crime itself, that is the facts of the crime itself, or should mitigate the punishment in favor of the defendant. Something about his personal background, his prior character, any factors like that. And that what the jury then essentially has to do is weigh the aggravating and mitigating circumstances under a formula, under a process, under a procedure, that the Legislature has set out and in that instance and with that understanding, that is where the jury fits in. Because the jury has sat and listened and deliberated first on the case

regarding whether the defendant was guilty or not guilty and then on to the second phase, if you should find the defendant guilty, if you have, what is the proper punishment?

Now, what they said, and again the Judge will instruct you in this, but the first thing that a jury must do in the sentencing phase is they must decide whether or not the State, the State has proved beyond a reasonable doubt one or more, that one or more aggravating circumstances even exists. We don't even, we don't even get to anything more, you don't have to make any other determinations until you decide that first. Whether or not the State has made a case, proved beyond a reasonable doubt that one or more aggravating circumstances exists.

Then, then and only then do they, if you decide, if the jury decides that yes the State has proved beyond a reasonable doubt that the aggravating circumstances, one or more, do in fact exist, the next question is whether or not that aggravating circumstance or those aggravating circumstances are outweighed by any mitigating evidence, any mitigating circumstances that the defense has brought forth. The law goes on and says that if you should find that the aggravating circumstance or circumstances shown to you by the State are not outweighed by any mitigating circumstances—in other words, the mitigating circumstances do not rise to such a point that in your opinion they outweigh the aggravating features of the crime, that the punishment, and this is the Legislature's language, that the punishment shall be death. It is a weighing process. The Legislature has picked out certain features that it believes, as I say, take an already very, an already serious crime and make it that much worse.

Now specifically, what aggravating circumstances, what aggravating features is the State allowed? Now, there are three aggravating circumstances that the State says that by our case-in-chief, the evidence that we presented at the time of the original question of guilt or innocence, what we

originally put on, that proof there we say demonstrates three, three aggravating circumstances.

We will do them in this order, but first of all, I am going to shorten it a little bit, use some shorthand, but, the circumstance itself is that the murder was committed while the defendant was engaged in committing or was an accomplice in the commission of, or was attempting to commit or was fleeing after committing, or attempting to commit, any, and in this case, robbery. In other words, any other serious felony. But now, murder was committed during a robbery.

Now the proof in that situation you have already heard. We have not only one, we have three murders. Murders plural. Committed during a robbery. And as a matter of fact the statute says, it says not only that the murder was committed while the defendant was engaged in committing a robbery, but also committed when the murder was, when the defendant was fleeing, fleeing from a robbery and we have—

THE COURT: General, that is not in the statutory aggravating circumstances.

MR. JOHNSON: I beg your pardon, if Your Honor please?

THE COURT: That is not in your aggravating circumstances, the fleeing part.

MR. JOHNSON: Well, if Your Honor please, I thought that our circumstances would take into account all of that language but if the Court is going to hold us to that, that is fine.

Ladies and gentlemen, in any event, what the situation is, is that this all occurred while the, while a robbery was taking place. That the murder, the murders, plural, were committed during, during a robbery. That is the first one. And we know what those are. We know what the proof is. We know that there was no resistance by anyone out there. We know that the robbery had in fact been accomplished. We know that the money had already been passed back to Cecil Johnson before the firing started. Before he shot Little Bob first, before he shot his father and before he shot Lewis Smith and before

he went out and killed two more men outside. And what is more, you have got those two people, Mr. House and Mr. Moore outside who, the evidence showed, were shot dead where they sat with absolutely no warning, without absolutely any idea, without having done anything, anything whatsoever to deserve that kind of fate.

Well, what else do we have? The second one is that the defendant knowingly created a risk of death to two or more persons other than the victim. Again, created a risk. Of course he created a risk. We have, of course, three murder victims to begin with. Then we have the serious injuries to Mr. Bell and Mr. Smith where murder was the intent. They were, they were almost killed themselves. By that man right there. You heard the evidence itself. You heard the evidence from that stand as to what the intent was, where their wounds were, how they were injured, when they were injured. Again, another aggravating circumstance and we say it is established beyond a reasonable doubt.

Then we come to the crux of this case and really the aggravating feature that had this case in mind.

MR. ENGLE: I would object to that. The General could not possible know what the legislature had in mind when they drafted this statute with reference to this case.

THE COURT: All right. Members of the jury, the last sentence you should disregard. Go ahead sir.

MR. JOHNSON: Well, in essence there is an aggravating circumstance that says that the murder was committed for the purpose of avoiding, interferring with, or preventing a lawful arrest for prosecution of the defendant or another. In short, what that means and I am just going to put avoiding arrest to cover this one, but in short what that means is killing a witness. Killing a witness. Something that has to be planned out. Something as we said earlier, is premeditated. Something that requires a deliberate act on the part of the killer. What we have got are three aggravating circumstances that have been established beyond a reasonable doubt. But look at them. The first two are interesting in the sense that what do they, what is aggravating about them? What is aggravating about them I submit is the fact that when a murder occurs during one of those, during a robbery, or when a murder occurs and it creates a risk to other people, what that demonstrates is that the defendant or the perpetrator of that crime is certainly completely wreckless with no disregard for the safety of other people in committing other acts. For instance in the first one where committing a robbery, commits it under circumstances where it is already automatically putting someone else's life in danger. Now, sure, that is a wanton disregard for the safety of another person, but how does that differ from the third? How does that differ from the question of killing a witness or in this case witnesses, plural? How does it differ? It differs because that, what is aggravating about that is the fact that it requires such a deliberate and conscious decision to kill. To deliberately make up one's mind that I am going to eliminate, that I am going to kill witnesses to my criminal behavior. And that is what we have in this case. That is what the case, that is what the State has told you from the very first, that what we have is a conscious, deliberate, premeditated attempt by the defendant to kill all the witnesses to the crime, a crime that he committed virtually in his own backyard, in his own neighborhood, in his own community, without the benefit of any disguise, without any effort whatsoever to disguise who he was, walks in there in a well lit market, holds up a man with whom he has traded with by any recollection of the proof from one to two to three to four times a week, who had not only been in there just a few days before, and goes in there and robs that market and then goes on to kill three of the five people that were there. Three of the five people that were there.

Witnesses are absolutely essential to the criminal justice system and that is why that feature there is an aggravating one. Where someone can deliberately set out to eliminate the very people, the very people that can be of assistance in prosecuting

him and bringing that person to justice. What would have happened, what would have happened if Bob Bell and Lewis Smith had also been killed? Remember, remember that Lewis Smith, the only piece of identification he even had on him was a driver's license and the defendant took it. Took it before the robbery had even occurred, while he was hurding people in the back he was searching, he took the license, he said I don't even want you to have this on you, from the very start. From the very start. He went into that market with the idea that he was going to eliminate every single person that could put him in that market. Every single person that could come in and get on that, that witness stand and testify, yes, they saw Cecil Johnson rob that market. Yes, they were the victim of a robbery. And that is precisely what he did.

The defense has an opportunity, has had an opportunity to put on mitigating circumstances. Of course, they will have an opportunity to argue those mitigating circumstances after I sit down. At the present time the only mitigating, two mitigating circumstances I think they have really said anything about, one was the lack of any substantial prior record and the other was that he was twenty-four years of age. I am not, at this point, I don't really intend to discuss the mitigating factors. That is something that you are going to have to weigh and look at yourself. Compare those mitigating factors to those aggravating factors. But, what is I think important, is to remember the proof. All the proof that has come in here. Because it is a serious decision and I think it is safe to say and often is said that actions, actions speak louder than words. There are things that you as individual jurors, as individual people can, can see and can pick up on to determine what this case is all about, what Cecil Johnson is all about. What have you seen from that witness stand? What have you observed in this courtroom about Cecil Johnson? He is cool. He is calm. Unfeeling, unemotional, remorseless. No remorse. Remorseless that night. Cool that night. In the middle of an armed robbery,

people were walking in and he has the presence of mind to put his arm around Bob Bell, the man whose son a few minutes later he was going to kill and say Bob you sure got some good barbecue. What about after the robbery? After the robbery he would go to his father's house, he was able to call the girlfriend to set up an alibi, able to go out and have a beer with a few people in the neighborhood. Able to eat breakfast at twelve or one o'clock in the morning.

What about his arrest? Cool. Turned himself in. Relied on his alibi. Said I was out of town, I was in Franklin. What about his testimony?

Ladies and gentlemen, the Court will define for you the law in this particular case. It will set out the formula that you need to, to apply, how you must go about assessing what is the proper punishment. That is all that the State asks of you. Thank you.

DROWOTA, Chief Justice, concurring.

While I concur in the results reached in the majority opinion, I write separately to express my opinion that the Court should not address the merits in this case because the rule of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), should not be retroactively applied in this post-conviction proceeding.

T.C.A. § 40–30–105 provides that post-conviction relief shall be granted when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of the State of Tennessee or the Constitution of the United States, including a right that was not recognized as existing at the time of trial *if either constitution requires retrospective application of that right.* In the recent case of *Sawyer v. Smith,* —— U.S. ——, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990), the United States Supreme Court, applying the retroactivity analysis announced in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), held that the Federal Constitution does not require that the constitutional rule established in *Caldwell v. Mississippi* be retroactively applied to those cases in which a habeas corpus petitioner's conviction had become final prior to the *Caldwell* decision.

In this case petitioner's conviction became final in October 1982, almost three years before the decision in *Caldwell, see Teague v. Lane,* 109 S.Ct. at 1067; therefore, retroactive application of *Caldwell* is not required.

The rule expressed in *Caldwell* is a part of Eighth Amendment jurisprudence and a matter of federal law. Where the Federal Constitution does not require retroactive application to judgments which have become final before a rule of federal constitutional law is announced, the Tennessee Constitution does not require otherwise.

Because of my position concerning the retroactivity of the *Caldwell* rule, I find it inappropriate to comment on the majority's evaluation of the merits of any *Caldwell* error in this case.

## ORDER ON PETITION TO REHEAR

A scholarly petition to rehear has been filed on behalf of defendant invoking various provisions of the Constitution of Tennessee and citing numerous court decisions in support of its solicitation to have the case resubmitted and reargued before the newly-elected and presently sitting Court.

The petition to rehear does not meet the requirements of T.R.A.P. 39.

The unanimous opinion of this Court in the case was filed on 4 September 1990. It is contended that the term of office of three of the Justices before whom the case was submitted and argued had expired prior to the date the opinion of the Court was filed and judgment entered, therefore these Justices were functus officio and without power to act.

On 27 August, 1990 the Chief Justice of this Court, under the auspices of Art. VI, Secs. 2, 3 and 11 of the State Constitution and T.C.A. § 16–3–502, designated each of the three Justices whose qualifications are questioned, to sit and act after August 31, 1990, as a Special Justice of the Supreme Court for the purpose of completing the work on all pending cases in which they had been a participant.

Defendant has been accorded every trial right guaranteed to him under either the State or Federal Constitution. These guarantees do not include a right to appellate review beyond the extent that the State may not discriminate against him individually in the appellate process. This has not occurred.

The request that this petition to rehear be submitted to and considered by the newly-elected Court taking office on 4 September 1990 is also without merit.

Three of the members of the presently sitting Court have not previously participated in consideration of the case and are therefore not lawfully competent to act in any capacity in its review.

The petition to rehear is denied.

DROWOTA, C.J., and COOPER and HARBISON, JJ., concur.

FONES, J., not participating.