ALLEN *v.* HARDY ET AL.

No. 85–6593.   Decided June 30, 1986

256

PER CURIAM.

In 1978, petitioner Earl Allen, a black man, was indicted for murdering his girlfriend and her brother. During selection of the petit jurors at petitioner's trial, the prosecutor exercised 9 of the State's 17 peremptory challenges to strike 7 black and 2 Hispanic veniremen. Defense counsel moved to discharge the jury on the ground that the "'State's use of peremptory challenges undercut [petitioner's] right to an impartial jury selected from a cross-section of the community by systematically excluding minorities from the petit jury.'" *People* v. *Allen*, 96 Ill. App. 3d 871, 875, 422 N. E. 2d 100, 104 (1981). The trial judge denied the motion. The jury convicted petitioner on both counts, and the judge sentenced him to two concurrent prison terms of from 100 to 300 years.

On appeal, petitioner repeated his argument concerning the State's exercise of peremptory challenges. Relying on *Swain* v. *Alabama*, 380 U. S. 202 (1965), and on Illinois case law decided under *Swain*, the Illinois Appellate Court rejected the argument. The court reasoned that in the absence of a showing that prosecutors in the jurisdiction systematically were using their challenges to strike members of a particular racial group, "a prosecutor's motives may not be inquired into when he excludes members of that group from sitting on a particular case by the use of peremptory challenges." 96 Ill. App. 3d, at 875, 422 N. E. 2d, at 104. The record in this case did not establish systematic exclusion as required by *Swain*. 96 Ill. App. 3d, at 876, 422 N. E. 2d, at 104. The court therefore affirmed petitioner's convictions. *Id.*, at 880, 422 N. E. 2d, at 107.

Petitioner then filed a petition for federal habeas corpus relief in the District Court for the Northern District of Illinois, on which he renewed his argument concerning the State's use of peremptory challenges. Construing this argument as alleging only that prosecutors in the jurisdiction systematically excluded minorities from juries, the District Court denied petitioner's motion for discovery to support the claim, and denied relief. *United States ex rel. Allen* v. *Hardy*, 577 F. Supp. 984 (1984). Petitioner's failure at trial "to make even an offer of proof" to satisfy the evidentiary standard of *Swain* constituted a procedural default for which petitioner had offered no excuse. *Id.*, at 986; see *United States ex rel. Allen* v. *Hardy*, 583 F. Supp. 562 (1984). In a subsequent opinion, the District Court also considered and rejected petitioner's contention that the State's exercise of its peremptory challenges at his trial violated the Sixth Amendment. *United States ex rel. Allen* v. *Hardy*, 586 F. Supp. 103, 104–106 (1984). Moreover, noting that the Court of Appeals for the Seventh Circuit had "twice within the past 60 days reconfirmed the continuing validity of *Swain*," the decision on which the orders in this case rested, the District Court declined to issue a certificate of probable cause.

Petitioner filed a notice of appeal, which the Court of Appeals for the Seventh Circuit construed as an application for a certificate of probable cause to appeal. Finding that petitioner failed to make a "substantial showing of the denial of a federal right" or that the questions he sought to raise "deserve[d] further proceedings," the court denied the request for a certificate of probable cause.

In his petition for certiorari, petitioner argues that the Court of Appeals' refusal to issue a certificate of probable cause was erroneous in view of the fact that *Batson* v. *Kentucky*, 476 U. S. 79 (1986), was pending before us at the time of the Court of Appeals' decision. The thrust of petitioner's argument is that the rule in *Batson* should be available to him as a ground for relief on remand. We conclude that our deci-

sion in *Batson* should not be applied retroactively on collateral review of convictions that became final before our opinion was announced.[1]   Accordingly, we grant petitioner's motion for leave to proceed *in forma pauperis*, grant the petition for a writ of certiorari, and affirm the judgment of the Court of Appeals.

In deciding the extent to which a decision announcing a new constitutional rule of criminal procedure should be given retroactive effect, the Court traditionally has weighed three factors.   They are "'(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.'"   *Solem* v. *Stumes,* 465 U. S. 638, 643 (1984) (quoting *Stovall* v. *Denno,* 388 U. S. 293, 297 (1967)); see *Linkletter* v. *Walker,* 381 U. S. 618, 636 (1965).   While a decision on retroactivity requires careful consideration of all three criteria, the Court has held that a decision announcing a new standard "is almost automatically nonretroactive" where the decision "has explicitly overruled past precedent." *Solem* v. *Stumes, supra,* at 646, 647.   The rule in *Batson* v. *Kentucky* is an explicit and substantial break with prior precedent.   In *Swain* v. *Alabama,* the Court held that, although the use of peremptory challenges to strike black jurors on account of race violated the Equal Protection Clause, a defendant could not establish such a violation solely on proof of the prosecutor's action at his own trial.   380 U. S., at 220–226.   *Batson* overruled that portion of *Swain,* changing the standard for proving unconstitutional abuse of pe-

---

[1] "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in" *Batson* v. *Kentucky.   Linkletter* v. *Walker,* 381 U. S. 618, 622, n. 5 (1965).   We express no view on the question whether our decision in *Batson* should be applied to cases that were pending on direct appeal at the time our decision was announced.   See *Griffith* v. *Kentucky,* No. 85–5221 (cert. granted, 476 U. S. 1157 (1986)), and *Brown* v. *United States,* No. 85–5731 (cert. granted, 476 U. S. 1157 (1986)).

remptory challenges. Against that background, we consider whether the standard announced in *Batson* should be available on habeas review of petitioner's murder convictions.

The first factor concerns the purpose to be served by the new rule. Retroactive effect is "appropriate where a new constitutional principle is designed to enhance the accuracy of criminal trials," *Solem* v. *Stumes,* 465 U. S., at 643, but the fact that a rule may have some impact on the accuracy of a trial does not compel a finding of retroactivity. *Id.,* at 643–645. Instead, the purpose to be served by the new standard weighs in favor of retroactivity where the standard "goes to the heart of the truthfinding function." *Id.,* at 645. By serving a criminal defendant's interest in neutral jury selection procedures, the rule in *Batson* may have some bearing on the truthfinding function of a criminal trial. But the decision serves other values as well. Our holding ensures that States do not discriminate against citizens who are summoned to sit in judgment against a member of their own race and strengthens public confidence in the administration of justice. The rule in *Batson,* therefore, was designed "to serve multiple ends," only the first of which may have some impact on truthfinding. See *Brown* v. *Louisiana,* 447 U. S. 323, 329 (1980); see also *Tehan* v. *United States ex rel. Shott,* 382 U. S. 406, 414 (1966). Significantly, the new rule joins other procedures that protect a defendant's interest in a neutral factfinder.[2] Those other mechanisms existed prior to our decision in *Batson,* creating a high probability that the individual jurors seated in a particular case were free from bias. Accordingly, we cannot say that the new rule has such a fundamental impact on the integrity of factfinding as to compel retroactive application.

---

[2] *Voir dire* examination is designed to identify veniremen who are biased so that those persons may be excused through challenges for cause. Moreover, the jury charge typically includes instructions emphasizing that the jurors must not rest their decision on any impermissible factor, such as passion or prejudice.

Moreover, the factors concerning reliance on the old rule and the effect of retroactive application on the administration of justice weigh heavily in favor of nonretroactive effect. As noted above, *Batson* not only overruled the evidentiary standard of *Swain*, it also announced a new standard that significantly changes the burden of proof imposed on both defendant and prosecutor. There is no question that prosecutors, trial judges, and appellate courts throughout our state and federal systems justifiably have relied on the standard of *Swain*.[3] Indeed, the decisions of the Illinois Appellate Court affirming petitioner's convictions and of the District Court denying habeas corpus relief clearly illustrate the reliance lower courts placed on *Swain*. Under these circumstances, the reliance interest of law enforcement officials is "compelling" and supports a decision that the new rule should not be retroactive. *Solem* v. *Stumes, supra,* at 650.

Similarly, retroactive application of the *Batson* rule on collateral review of final convictions would seriously disrupt the administration of justice. Retroactive application would require trial courts to hold hearings, often years after the conviction became final, to determine whether the defendant's proof concerning the prosecutor's exercise of challenges established a prima facie case of discrimination. Where a defendant made out a prima facie case, the court then would be required to ask the prosecutor to explain his reasons for the challenges, a task that would be impossible in virtually every case since the prosecutor, relying on *Swain,* would have had no reason to think such an explanation would someday be necessary. Many final convictions therefore would be vacated, with retrial "hampered by problems of lost evidence, faulty memory, and missing witnesses." *Solem* v.

___

[3] The substantial reliance by lower courts on the standard in *Swain* has been fully documented elsewhere. See *Batson* v. *Kentucky,* 476 U. S. 79, 82, n. 1 (1986); *McCray* v. *Abrams,* 750 F. 2d 1113, 1120, n. 2 (CA2 1984), vacated and remanded, *post,* p. 1001.

*Stumes, supra,* at 650; see also *Linkletter* v. *Walker,* 381 U. S., at 637.

Our weighing of the pertinent criteria compels the conclusion that the rule in *Batson* should not be available to petitioner on federal habeas corpus review of his convictions. We therefore affirm the judgment of the Court of Appeals.[4]

*Affirmed.*

JUSTICE BLACKMUN would grant the petition for a writ of certiorari and set the case for oral argument.

JUSTICE MARSHALL, with whom JUSTICE STEVENS joins, dissenting.

On all too many occasions in recent years, I have felt compelled to express my dissatisfaction with this Court's readiness to dispose summarily of petitions for certiorari on the merits without affording the parties prior notice or an opportunity to file briefs. See, *e. g., Los Angeles* v. *Heller,* 475 U. S. 796, 800 (1986) (MARSHALL, J., dissenting); *Cuyahoga Valley R. Co.* v. *Transportation Union,* 474 U. S. 3, 8 (1985) (MARSHALL, J., dissenting); *Maggio* v. *Fulford,* 462 U. S. 111, 120–121 (1983) (MARSHALL, J., dissenting). "[B]y deciding cases summarily, without benefit of oral argument and full briefing, and often with only limited access to, and review of, the record, this Court runs a great risk of render-

---

[4] In his petition for certiorari, petitioner also argues that the District Court erroneously denied him discovery on his claim that prosecutors systematically had excluded minorities from petit juries in the jurisdiction. In effect, the District Court held that, by making no offer of proof on this claim, petitioner's bare objection failed to preserve the claim for review. Since petitioner points to no Illinois authority casting doubt on the District Court's conclusion that, at the least, an offer of proof was necessary to preserve the issue, we have no reason to question the District Court's conclusion that the claim was waived. Similarly, the District Court properly determined that petitioner was required to, and did not, establish cause and prejudice excusing his default. See *Wainwright* v. *Sykes,* 433 U. S. 72 (1977).

ing erroneous or ill-advised decisions that may confuse the lower courts: there is no reason to believe that this Court is immune from making mistakes, particularly under these kinds of circumstances." *Harris* v. *Rivera*, 454 U. S. 339, 349 (1981) (MARSHALL, J., dissenting).

The circumstances are even less propitious in this case. Generally when this Court summarily disposes of a petition for certiorari, we have at least benefited from the tendency of both petitioners and respondents to focus excessively on the merits of the question they ask the Court to consider. Here, because the petition was filed prior to our decision in *Batson* v. *Kentucky*, 476 U. S. 79 (1986), petitioner never had the opportunity to address whether that decision should be applied retroactively to those seeking collateral review of their convictions, and respondent chose to devote but a single sentence to the issue. In addition, that issue has not been addressed by lower courts in this case or any other. See *United States* v. *Hollywood Motor Car Co.*, 458 U. S. 263, 271 (1982) (BLACKMUN, J., dissenting). We write on a clean slate in this case — a position we ordinarily take great pains to avoid.

I believe that the Court's opinion today reflects the unseemly haste with which the important question presented here has been resolved. Like the Court, *ante* at 258, I believe that the impact of a "new constitutional rule" on the accuracy of a trial should be a critical concern in any inquiry into whether that rule should be applied retroactively to cases pending on collateral review; indeed, I think that factor should generally be decisive. See *Williams* v. *United States*, 401 U. S. 646, 666 (1971) (MARSHALL, J., concurring in part and dissenting in part). However, I am not at all persuaded by the majority's conclusion that the rule announced in *Batson* lacks "such a fundamental impact on the integrity of factfinding as to compel retroactive application," *ante*, at 259. The Court is surely correct to note that the rule "serves other values" besides accurate factfinding.

*Ibid.* "The effect of excluding minorities goes beyond the individual defendant, for such exclusion produces 'injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts.'" *McCray* v. *New York*, 461 U. S. 961, 968 (1983) (MARSHALL, J., dissenting from denial of certiorari). A rule that targets such discriminatory practices will thus provide redress to citizens unconstitutionally struck from jury panels. That criminal defendants will not be the only beneficiaries of the rule, however, should hardly diminish our assessment of the rule's impact upon the ability of defendants to receive a fair and accurate trial. Moreover, I do not share the majority's confidence that "other procedures" in place prior to our decision in *Batson* "creat[e] a high probability that the individual jurors seated in a particular case were free from bias," *ante*, at 259. When the prosecution unconstitutionally uses its peremptory strikes to remove blacks and Hispanics from the jury, the threat to the truthfinding process is not cured by measures designed merely to ensure that white jurors permitted to serve satisfy the legal standard for impartiality.

> "When any large and identifiable segment of the community is excluded form jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude . . . that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented." *Peters* v. *Kiff*, 407 U. S. 493, 503-504 (1972) (opinion of MARSHALL, J.).

Certainly, one need not assume that the exclusion of *any* distinctive group from the venire will affect the integrity of the factfinding process to believe, as I do, that where the prosecution uses its peremptory challenges to cull black and His-

panic jurors from the jury empaneled for the trial of a black defendant, the threat to the accuracy of the trial is significant and unacceptable. See *Batson, supra,* at 87, n. 8 ("For a jury to perform its intended function as a check on official power, it must be a body drawn from the community").

The other considerations that the Court finds to counsel against retroactivity here are similarly unpersuasive. While *Batson* overruled *Swain* v. *Alabama,* 380 U. S. 202 (1965), by changing the burden of proof imposed upon both defendants and prosecutors, *ante,* at 260, the Court seriously overestimates the "reliance interest of law enforcement officials" in the old regime. This is not a case in which primary conduct by such officials was permitted by one decision of this Court and then prohibited by another. *Swain* made quite clear that the use of peremptory challenges to strike black jurors on account of their race violated the Equal Protection Clause. All *Batson* did was give defendants a means of enforcing this prohibition. Even if the Court is willing to consider prosecutors to have relied on the effective unenforceability of the pronouncements in *Swain,* it should at least give some thought as to whether that reliance should be deemed legitimate.

Finally, the Court observes that "retroactive application of the *Batson* rule on collateral review of final convictions would seriously disrupt the administration of justice." *Ante,* at 260. Perhaps this is true; perhaps it is not. Certainly, the papers before us in this case allow us no basis for making any estimate of how many defendants pursuing federal habeas relief have preserved a *Batson* claim in the state courts. In this inquiry, perhaps more than in any other aspect of the case, the need for further briefing, and perhaps the participation of interested *amici,* is compelling, and the majority's readiness to act on its own uninformed assumptions, disturbing.

I would grant the petition for certiorari and set the case for briefing on the merits and oral argument next Term.