STATE of Indiana, Appellant–
Respondent,

v.

Jacinto SILVA, Appellee–Petitioner.

No. 82A05–9503–PC–87.

Court of Appeals of Indiana.

June 26, 1996.

Pamela Carter, Attorney General of Indiana, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for Appellant.

Robert Canada, Evansville, for Appellee.

## OPINION

RUCKER, Judge.

After a jury trial Jacinto Silva was found guilty of rape. He subsequently filed a petition for post-conviction relief contesting the State's use of its peremptory challenges. Apparently the State had intentionally and purposefully excluded men from the jury. The post-conviction court granted the petition and the State of Indiana now appeals contending the court erred in so doing. We agree and therefore reverse.

On May 24, 1989, a jury convicted Silva of rape as a Class B felony. Silva's conviction was affirmed by memorandum decision on direct appeal to this court (Cause No. 82A01–8910–CR–422). Silva filed a petition for post-conviction relief on March 11, 1993, alleging among other things that he had been denied equal protection of the law due to the discriminatory manner in which the State had exercised its peremptory challenges. His claim of error was based on the following facts. During voir dire, the State peremptorily challenged five men and one woman. Silva did not object to the State's exercise of its peremptory challenges, nor did he object

to the ultimate composition of the jury, which consisted of eleven women and one man.

At the hearing on the petition the trial deputy prosecutor testified that he had exercised his peremptory challenges purposefully to exclude men from the jury. According to the deputy, because the case involved a crime of violence against a woman, he had made a concerted effort to place as many women on the jury as possible. Concluding that the State's purposeful and systematic use of its peremptory challenges to eliminate male venirepersons denied Silva equal protection, the post-conviction court vacated Silva's conviction. In so doing the court relied upon the recent U.S. Supreme Court decision of *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) which held that intentional discrimination on the basis of gender during jury selection violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. This appeal ensued in due course.

■ The State contends the post-conviction court erred by retroactively applying *J.E.B.* The doctrine of retroactivity is governed by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), *reh'g denied*, 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206, which was adopted by our supreme court in *Daniels v. State*, 561 N.E.2d 487 (Ind.1990). In general, a new constitutional rule of criminal procedure does not apply to those cases which have become final before the new rule was announced. *Teague*, 489 U.S. at 309–11, 109 S.Ct. at 1075; *Daniels*, 561 N.E.2d at 488 (Ind.1990). Here, Silva's direct appeal was concluded and became final before the Supreme Court decided *J.E.B.* Therefore, assuming for the moment that *J.E.B.* announced a "new rule" prohibiting gender-based peremptory challenges, then as a general proposition the rule may not be applied retroactively to Silva's case. There are however two exceptions to the nonretroactivity of new rules: (1) rules which place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073; and (2) those which require the observance of "procedures that ... are 'implicit in the con-

cept of ordered liberty,'" *Id.*, and "without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 313, 109 S.Ct. at 1077.

According to the State, the Supreme Court's decision in *J.E.B.* set forth a new rule, and Silva may not benefit from its retroactive application. Silva counters with two arguments. First Silva contends that *J.E.B.* did not set forth a new rule, but rather merely extended to gender the existing prohibition against race-based peremptory challenges announced in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Second, according to Silva, even if *J.E.B.* announced a new rule, the *Teague* exceptions nonetheless require the retroactive application of *J.E.B.*

■ Silva's argument on the first point is curious. If indeed *J.E.B.* merely represents an extension of *Batson* rather than the announcement of a new constitutional rule of criminal procedure, then the post-conviction court erred in vacating Silva's conviction. Because Silva neither objected at trial to the State's use of its peremptory challenges, nor raised the issue in his direct appeal, the issue is waived for post-conviction review. The law is settled that absent a showing by the post-conviction petitioner that an issue was unascertainable or unavailable at the time of trial and direct appeal, allegations of error arising therefrom may not be raised in the post-conviction proceedings. *Cummings v. State*, 495 N.E.2d 181 (Ind.1986). Silva made no such showing here. *See also Lyons v. State*, 600 N.E.2d 560 (Ind.Ct.App.1992), *reh'g denied*, (By failing to object at trial to the removal of a juror as constituting racial discrimination, the defendant waived his *Batson* claim).

■ In any event, we disagree with Silva's claim that *J.E.B.* did not announce a new constitutional rule of criminal procedure. The rule prohibiting intentional discrimination on the basis of gender during jury selection qualifies as a "new rule" under *Teague* because it "breaks new ground or imposes a new obligation on the State or Federal Government," or produces a result "not *dictated* by precedent existing at the time the defen-

dant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070 (emphasis in original). Therefore unless the *Teague* exceptions apply in this case, the rule announced in *J.E.B.* cannot be applied to Silva retroactively. In deciding whether *J.E.B.* announced a new rule we must determine 1) whether the rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, or 2) whether the rule requires the observance of procedures that are "implicit in the concept of ordered liberty," and without which the likelihood of an accurate conviction is seriously diminished. *Teague,* 489 U.S. at 306–07, 313–14, 109 S.Ct. at 1073, 1077. The second exception is applicable only to "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding. *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 1264, 108 L.Ed.2d 415 (1990), *reh'g denied.*[1] Both parties agree that the first exception is not applicable here. However Silva contends the second exception applies in this case.

The Supreme Court addressed a similar contention in *Allen v. Hardy,* 478 U.S. 255, 260–61, 106 S.Ct. 2878, 2881, 92 L.Ed.2d 199 (1986). In that case the Court held that the rule set forth in *Batson,* which was "an explicit and substantial break with prior precedent," *Id.* at 258, 106 S.Ct. at 2880, was not retroactively applicable on collateral review of final convictions. In so holding the Court reasoned that the rule in *Batson* did not have "such a fundamental impact on the integrity of fact finding as to compel retroactive application." *Id.* at 259, 106 S.Ct. at 2881. Although *Allen* was decided before the Court's holding in *Teague,* the *Teague* Court itself enunciated a similar rationale by holding that the absence of a fair cross-section of the community in a jury venire "does not undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction." *Teague,* 489 U.S. at 315, 109 S.Ct. at

1078. Here, as in *Allen* and *Teague,* we find that the rule of *J.E.B.* barring gender-based peremptory challenges does not implicate fundamental fairness so as to fall within the second exception to the general rule of non-retroactivity. Silva does not contend, and nothing before us demonstrates, that the accuracy of Silva's conviction was diminished by the State's gender-biased exercise of peremptory challenges during jury selection.

The post-conviction court erred in determining that the new rule set forth in *J.E.B.* was retroactively applicable on collateral attack of Silva's conviction. Thus, we reverse the judgment of the post-conviction court and remand this cause for reinstatement of Silva's conviction.

Judgment reversed.

SHARPNACK, C.J., and NAJAM, J., concur.

defendant has the right to be represented by counsel in all criminal trials for serious offenses. *See e.g. Saffle,* 494 U.S. at 495–96, 110 S.Ct. at 1264.

1. The precise contours of the second exception are not easily discernable. However, the Supreme Court has usually illustrated the exception by citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), holding that a