WOOD, Chief Judge,
dissenting.
The Illinois Supreme Court held that Floyd Richardson cannot benefit from the Supreme Court’s decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) because, while Batson was decided only while his case was on *278 direct appeal, Richardson failed to show cause for his failure contemporaneously to object to the prosecution’s use at trial of peremptory challenges. The state court reached that result by concluding that because Richardson’s trial counsel did not (futilely) object to the composition of the jury under Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), any argument under Batson was waived. It reasoned that appellate counsel’s performance could not be deemed inadequate under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), it continued, because any effort by appellate counsel to raise the Batson claim would have been doomed because of this supposed waiver. Richardson challenged this outcome in a petition for a writ of habeas corpus, which the district court granted. The majority today reverses that judgment, on the ground that Richardson defaulted on his challenge to the prosecution’s use of peremptories and has not demonstrated the necessary cause and prejudice to overcome that default and thus to prevail on his claim of ineffective appellate counsel. I respectfully dissent.
I
I have nothing to add to the majority’s summary of the underlying facts and procedural posture of the case. Indeed, I agree with them on two points: Richardson failed to preserve any argument he might have about the effectiveness of trial counsel’s performance, and he procedurally defaulted his Batson argument because the Illinois Supreme Court’s waiver finding was an adequate and independent state ground supporting its decision. Where I part company is on the question whether he has shown the cause and prejudice that is needed to overcome his procedural default. Because Batson fundamentally enlarged the application of the Equal Protection Clause to the racially discriminatory use of peremptory challenges in even a single case, and in so doing overturned a critical portion of Swain, I would affirm the district court. In order to reach this conclusion, I must consider both the effectiveness of appellate counsel and the intertwined question whether the Illinois court’s rule barring Batson challenges if a Swain challenge was forfeited is consistent with the jurisprudence of the United States Supreme Court.
II
At the heart of all this is the question whether Batson announced a new rule under the Equal Protection Clause, as it applies to the use of peremptory challenges. See Reed v. Ross, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). As the Supreme Court noted in Whorton v. Bockting, 549 U.S. 406, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007), “[u]nder the Teague [v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) ] framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review.” 549 U.S. at 416, 127 S.Ct. 1173. If, or to the extent that, Batson announced a new rule, then Richardson’s appellate counsel performed deficiently by failing to raise the issue on direct review. Moreover, precisely because the rule is new, Richardson cannot be said to have waived the point because he did not raise it at trial.
My colleagues concede, ante at 274-75, that Batson overruled Swain, but they interpret the Supreme Court’s statement that it did so with respect to the “standard for proving unconstitutional abuse of peremptory challenges” differently from the way I do. See ante at 274-75. Indeed, as I explain, I believe that their interpretation fails to reflect the Supreme Court’s *279 own discussion in Batson. When the Bat-son Court changed “the quantum of proof necessary to make out a 'prima facie case of discrimination,” ante at 274, it rejected “the evidentiary formulation” that a number of lower courts had used after Swain, under which those courts thought that “proof of repeated striking of blacks over a number of cases was necessary to establish a violation of the Equal Protection Clause.” 476 U.S. at 92-98, 106 S.Ct. 1712. The Court then set forth “[t]he showing necessary to establish a prima facie case of purposeful discrimination in selection of the venire.” Id. at 94, 106 S.Ct. 1712. In so doing, the Court said, “the defendant may establish a prima facie case ‘in other ways than by evidence of long-continued unexplained absence’ of members of his race ‘from many panels.’ ” Id. at 95, 106 S.Ct. 1712 (Cassell v. Texas, 339 U.S. 282, 290, 70 S.Ct. 629, 94 L.Ed. 839 (1950) (plurality opinion)). Specifically, “since the decision in Swain, this Court has recognized that a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection in his case.” Id. The Court underscored the point only a few lines later, stating that the principles articulated since Swain “support our conclusion that the defendant may establish a prima facie ease of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor’s exercise of peremptory challenges at the defendant’s trial.” Id. at 96, 106 S.Ct. 1712 (emphasis added).
As the Court recognized, Swain said in no uncertain terms that the “standard” for proving an equal protection violation was not met if the defendant showed only that a prosecutor used peremptory challenges in the defendant’s own case in a racially discriminatory way. Batson agreed that system-wide discrimination (as called for by Swain) would be one way in which a violation could be proven, but it added another path that also would satisfy the standard of proof: proof of discriminatory use of peremptories “at the defendant’s trial.” Whatever label one puts on this — a difference in “standard of proof,” as the Court called it, or a broader conception of the underlying substantive right, as it can also be characterized — it is plain that the part of Swain that the Court disapproved in Batson was the earlier case’s rejection of a standard that insisted on a showing of continuous and systematic discrimination and found inadequate a showing only of discrimination in the defendant’s own trial. The Court itself recognized that it was announcing a new rule to this extent, albeit one that it later decided should apply only on direct appeals, not on collateral review. This point is reinforced by a closer look at the two cases.
In Swain, petitioner Swain, a black man, was indicted and convicted of rápe in an Alabama state court; he was sentenced to death. Swain raised three separate challenges to the jury selection process: the first concerned the process by which veni-re persons were selected; the second focused on the prosecutor’s use of preempto-ry challenges to remove the six remaining black persons from the jury that tried him; and the third attacked the systematic use of peremptory challenges by Talladega County prosecutors to remove black venire persons in all cases. Swain supported the latter point with evidence that literally no black persons had served on a petit jury in the county since around 1950, even though black males constituted 26% of those who could serve. At trial, the court denied his motions to strike the trial jury venire and to declare void the petit jury that was chosen. These motions were based on the ground that the selection of the trial jury resulted from invidious race-based discrimination in violation of the Equal Protection *280 Clause. The Alabama Supreme Court affirmed his conviction, and the case then moved to the United States Supreme Court.
Focusing on the Supreme Court’s analysis of Swain’s second claim (that the use of preemptory challenges to remove all remaining black persons from the jury that tried him was racially motivated in violation of the Fourteenth Amendment), we see that the Court did not reject the claim because of inadequate evidence. Instead, the Court thought that even if the allegations were true, petitioner failed to state a claim cognizable under the Fourteenth Amendment. The Court’s reasoning is worth setting out in some detail, because this is the precise part of Swain that Bat-son was to overrule 21 years later. It is also the precise reasoning that I believe the majority has overlooked. Here is what the Court said:
The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court’s control. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. It is often exercised upon the ‘sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another,’ upon a juror’s ‘habits and associations,’ or upon the feeling that ‘the bare questioning (a juror’s) indifference may sometimes provoke a resentment.’ It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be.... Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried.
Id. at 220-21, 85 S.Ct. 824 (emphases added) (internal citations omitted). The sentence that follows this passage is unambiguous and underscores the distinction between Swain and Batson: “With these considerations in mind, we cannot hold that striking of Negroes in a particular case is a denial of equal protection of the laws.” Id. at 221, 85 S.Ct. 824 (emphasis added). The Court thus held that the motion to strike the trial jury was properly denied.
The Court in Swain embraced a rule under which the Equal Protection Clause does not reach discrimination in the use of peremptory challenges at the retail level— that is, in the selection of the defendant’s own jury. That holding has nothing to do with the order of proof; it delineates what will, and will not, violate the Constitution. Under Swain, the Equal Protection Clause is violated only where prosecutors “consistently and systematically exercised their strikes to prevent any and all Negroes on petit jury venires from serving on the petit jury itself.” Id. at 228, 85 S.Ct. 824. This would have to go on “in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be.” Id. The Swain Court did not pursue that point further, because it found that it was “readily apparent that the record in this case [was] not sufficient to demonstrate that the rule has been violated by the peremptory system as it *281 operates in Talladega County.” Id. at 224, 85 S.Ct. 824.
Batson overruled and fundamentally transformed this portion of Swain. Instead of recognizing an equal protection violation only if “case after ease, whatever the circumstances” the peremptory system was being used in a racially discriminatory way, Batson held that “a defendant may make a prima facie showing of purposeful racial discrimination in selection of the ve-nire by relying solely on the facts concerning its selection in his case.” 476 U.S. at 95, 106 S.Ct. 1712.
It is true that Batson went on to outline how a defendant should go about presenting proof of purposeful discrimination in the use of peremptories. But the crucial question — what must the proof demonstrate — changed between Swain and Bat-son. A substantive claim — discrimination in the selection of the defendant’s own jury — went from being outside to being within the reach of the Equal Protection Clause.
Suppose, in a particular case that arose in 1980 (that is, after S%vain but before Batson), a criminal defendant (or more realistically his lawyer) realized that it would not be possible in his area to demonstrate consistent and systematic discrimination in the use of peremptory challenges, yet he believed that he could demonstrate purposeful racial discrimination in the selection of the jury in his particular case. Such a lawyer, knowing that Swain dictated the applicable law, would be forced to conclude that it would be frivolous to raise an equal protection claim. If he tried to do so, he would be met with the statement in Swain that the Court “cannot hold that striking of Negroes in a particular case is a denial of equal protection of the laws.” 380 U.S. at 221, 85 S.Ct. 824. The prosecutor would be quick to point out that the Swain Court did not recognize a claim based on “allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes.” Id. at 222, 85 S.Ct. 824 (emphasis added).
Now suppose that the same case arose in 1990, after Batson. Defense counsel operating with the benefit of the Batson rule would know that her client had a cognizable claim, because for the first time it would be permissible to rely “solely on the facts concerning [jury] selection in his case” 476 U.S. at 95, 106 S.Ct. 1712. That is not an evidentiary difference; it is a substantive one.
The Supreme Court’s decisions reinforce this point. In direct contrast to Swain, Batson and the cases that follow it find that the racially discriminatory use of even one peremptory challenge in a single case violates the Equal Protection Clause. See, e.g., Snyder v. Louisiana, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) (conviction overturned on habeas corpus petition because of single discriminatory peremptory challenge); Miller-El v. Dretke, 545 U.S. 231, 239, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) {Batson expanded Swain by holding that a defendant could support a prima facie case by relying only on the totality of the facts in his own trial).
Other areas of Fourteenth Amendment jurisprudence illustrate the distinction between evidentiary methodology and criteria to state a claim. In Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), for instance, a state prison inmate’s mail-order hobby materials were lost when prison officials failed to follow the normal procedures for mailed packages. The inmate sued the officials under section 1983. The Supreme Court held that while the inmate had been deprived of property under color of state law, he nonetheless did not state a claim for relief because the alleged deprivation did not *282 trigger the protections of the Due Process Clause. This was because the deprivation did not occur as a result of an established state procedure. Id. at 543, 101 S.Ct. 1908. Parratt emphasized that state law provides procedures for accidental deprivations of property, and this was enough to satisfy due process. More generally, it stands for the proposition that not all property deprivations inflicted by state officials acting under color of law violate the Fourteenth Amendment — only those that also occur without due process. Similarly, under Swain, the rule was that not all racial discrimination in the use of peremptory challenges violates the Fourteenth Amendment. The Constitution, it held, is violated only if that discrimination was system-wide and longstanding (and for the Swain Court, not even fifteen years with zero African-Americans on a jury in Tal-ladega County satisfied that element).
Monell brings out a similar point. Monell v. Dep’t of Soc. Servs. of City of N.Y., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There, the Supreme Court held that local governments can be held liable for constitutional deprivations only when the complaint is about governmental custom, practice, or policy; there is no re-spondeat superior liability under § 1983. Id. at 691-92, 98 S.Ct. 2018. The fact that a plaintiff cannot succeed on a Monell claim for a deprivation that does not arise out of a policy or custom is not an eviden-tiary bar; it is a substantive restriction on the claim. Similarly, under Swain, a plaintiff could not succeed on an equal protection claim limited to discrimination in his own jury. This was not because of anything about the burdens of production or proof; it was because the Court saw peremptory challenges as an essential and traditional part of a criminal trial, and it believed that a constitutional violation arose only if pervasive misuse could be proven.
Proving one instance and proving a continuous and systematic pattern are two different things. Batson changed the law, but the Illinois courts did not acknowledge that fact, and today the majority perpetuates that error. This is an error that meets the demanding standards for federal habeas corpus relief. The Illinois court’s decision that counsel waived a Bat-son argument by failing to raise a Swain argument amounts to a decision that is contrary to the law as announced by the Supreme Court of the United States. At the very least, it is an unreasonable application of that law. Since that is the case, it was also error for the state court to conclude that appellate counsel’s performance was constitutionally adequate in the face of his failure to take advantage of the Supreme Court’s intervening Batson decision while Richardson’s direct appeal was under consideration in the Illinois courts. (I stress again that this case does not present any problem about retroactive application of Batson to cases that have become final in the state system, because Richardson’s case had not reached that point. My position is entirely consistent with the Supreme Court’s decision in Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), which held that Bat-son does not apply retroactively to cases on collateral review.)
As the Supreme Court reaffirmed in Hinton v. Alabama, — U.S. -, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014), “counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.” 134 S.Ct. at 1088, quoting from Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052. Counsel in Hinton “failed to make even the cursory investigation of the state statute” in question. 134 S.Ct. at 1089. The Court concluded that “[a]n attorney’s ignorance of a point of law that is funda *283 mental to his ease combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under Strickland.” Id. As the record in our case shows, that is exactly the kind of performance Richardson’s appellate counsel rendered. It appears that he was unaware of the Supreme Court’s decision in Batson, and thus he made no effort to argue to the Illinois courts that the jury selection process in Richardson’s own case was tainted by racial discrimination. After Batson, counsel had no duty to shoulder the additional burden of showing that the process in Illinois, or in Cook County, was systematically and consistently flawed.
As the able district judge did; I would find that Richardson received constitutionally ineffective assistance of counsel with respect to his Batson argument, and I would grant the writ on that basis. In Allen v. Hardy, the Supreme Court waxed eloquent about how prosecutors and judges had “compelling” reliance interests on Swain; that is why it held that Batson would not apply retroactively to convictions that became final before Batson was announced. 478 U.S. at 260, 106 S.Ct. 2878. I note as well that there is something seriously out of kilter about the notion that the reliance of prosecutors on Swain was “compelling,” but that the reliance of defense counsel on Swain is of no moment. If defense counsel should have anticipated Batson, then it seems only fair to think that prosecutors should have done so, too. In fact, as Allen recognized, Bat-son was a break with the past, but a break that would apply only to cases on direct review, not to cases on collateral review. That is what should have happened here.
Ill
Richardson has also presented other arguments in support of the district court’s judgment, but like my colleagues, I reject them. Although I consider his arguments about counsel’s performance at sentencing to be close, I am persuaded that the deferential standard dictated by 28 U.S.C. § 2254(d) requires us to deny relief on that ground. I also find no reversible error in the district court’s decision that his arguments based on the admission of the “other crimes” evidence do not meet the standard for granting the writ. I would therefore affirm the district court’s judgment across the board, and thus I respectfully dissent.