# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 22-453

**STATE OF LOUISIANA**

**VERSUS**

**LAURA DUGAS**

\*\*\*\*\*\*\*\*\*\*

ON SUPERVISORY WRIT OF REVIEW FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 00-128813
HONORABLE ANTHONY THIBODEAUX, JUDGE PRESIDING

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Gary J. Ortego, Judges.

**WRIT GRANTED AND MADE PEREMPTORY.**

**M. Bofill Duhé**
**District Attorney**
**W. Claire Howington**
**Assistant District Attorney**
**Sixteenth Judicial District**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
    **Counsel for State of Louisiana**

**Carlotta Lepingwell**
**Becki Kondkar**
**Tulane Law Clinic**
**6329 Freret Street, Suite 130**
**New Orleans, LA 70118**
**(504) 865-5153**
    **Counsel for Respondent – Laura Dugas**

**KYZAR, Judge**

The State applies for a writ of review after the trial court granted an application for post conviction relief, originally filed in 2019 by Respondent, claiming ineffective assistance of counsel at her sentencing, among other claims. For the following reasons, we grant the writ and make it peremptory.

## FACTS AND PROCEDURAL HISTORY

As discussed in the original appeal by Respondent, Laura Dugas, a jury convicted her on September 6, 1994, of second degree murder pursuant to La.R.S. 14:30.1. *State v. Dugas*, 96-49 (La.App. 3 Cir. 10/9/96), 683 So.2d 1253, *writ denied*, 96-2652 (La. 4/4/97), 692 So.2d 417. On September 30, 1994, the district court sentenced her to the mandatory term of life imprisonment without the benefit of parole, probation, or suspension of sentence. *Id.* The complete, underlying facts of the crime which led to the conviction in this case are not pertinent to the current application, which focuses on a procedural issue only, and, thus, will not be discussed.

In June of 2019, Respondent filed an application for post conviction relief, asserting that her trial counsel was ineffective for failing to consult an expert on Battered Women's Syndrome. In April of 2021, she supplemented her application with two new claims, one being her assertion of ineffective assistance of counsel at sentencing and that the Louisiana Supreme Court decision in *State v. Harris*, 18-1012 (La. 7/9/20), 340 So.3d 845, allowed such claims to considered on collateral review. The other argument asserted the jury verdict was not unanimous.

The district court held a hearing on April 22, 2022, solely on the issue of whether Respondent's *Harris* claim was untimely.[1] The trial court held that *Harris*

---

[1] The sole issue at the hearing on April 22, 2022 was whether Ms. Dugas' *Harris* claim of ineffective assistance of counsel at sentencing was untimely, and it is the only issue subject to this writ application.

applies retroactively and allowed the post conviction case to proceed. This writ application by the State followed, asserting that the trial court erred by ruling that *Harris* applies retroactively so as to allow Respondent to assert her claim of ineffective assistance of counsel at her sentencing, which took place in 1994.

## DISCUSSION

The State argues in its sole assignment of error that the trial court erred by ruling that *Harris* applies retroactively and allowing Respondent to proceed with her application for post conviction relief. The State notes that under the version of La.Code Crim.P. art. 930.8 in effect at the time of her conviction, Respondent had three years to pursue post-conviction relief. The State also acknowledges that the 1990 amendment of La.Code Crim.P. art. 930.8 preserved the three-year limit to apply for post conviction relief for criminal defendants whose time had not run out at the time of the amendment, even though the overall effect of the amendment was to reduce the prescriptive period from three years to two years.

Even applying the three-year period, it is clear the time limitation for post conviction relief has expired, since the conviction and sentence became final in 1997.[2] However, La.Code Crim.P. art. 930.8 provides an exception to the limitation for the filing, as follows:

> A. No application for post conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
>
> . . . .
>
> (2) The claim asserted in the petition is based upon a final ruling of an appellate court establishing a theretofore unknown interpretation of constitutional law and petitioner establishes that this interpretation is

---

[2]Respondent's conviction and sentence became final on April 4, 1997, after the Louisiana Supreme Court denied her application for a writ from the decision of this court on direct appeal.

2

retroactively applicable to his case, and the petition is filed within one year of the finality of such ruling.

As mentioned previously, the sole issue to be resolved is whether the decision in *Harris* is to be applied retroactively as a theretofore unknown interpretation of constitutional law, permitting Respondent to pursue her claim even though the codified time limit for post conviction relief has expired. The issue is clear: if *Harris* is indeed to be applied retroactively, Respondent's claim is timely per the exception provided by La.Code Crim.P. art. 930.8(A)(2), as it was filed within the year following the finality of the decision in *Harris*. If it is not retroactive, the claim is barred by the application of La.Code Crim.P. art. 930.8(A).

In *Harris*, the supreme court granted a writ to consider whether relator Derrick Harris, serving a life sentence pursuant to the Habitual Offender law following a conviction for distribution of 0.69 grams of marijuana, could litigate a claim of ineffective assistance of counsel at sentencing on post conviction review for counsel's failure to raise the excessiveness of the sentence at the time of the sentencing. The court noted that until the consideration of the case in *Harris*, a person could not raise the question of excessiveness of sentence in a post conviction application based on the application of La.Code Crim.P. art. 930.3, citing its per curiam opinion in *State ex rel. Melinie v. State*, 93-1380 (La. 1/12/96), 665 So.2d 1172. After considering Louisiana's post conviction relief provisions, particularly the post conviction reform measures undertaken pursuant to 1976 La. Acts No. 448 and 1980 La. Acts No. 429, the supreme court held that an ineffective assistance of counsel at sentencing claim is cognizable on collateral review, given the fundamental right involved. *Harris*, 340 So.3d 845.

The State asserts that, although some cases have permitted retroactive *Harris* claims, no case has actually analyzed whether *Harris* should be applied

3

retroactively. We agree. Justice Crichton, concurring in the denial of a writ application, stated as much in *State v. Marcus Harris*, 21-1641, p. 1 (La. 1/19/22), 331 So.3d 321, 321-22 (Crichton, J., concurring.)

> Citing rationale from *State v. Harris*, 2018-1012 (La. 7/9/20), - - - So.3d - - -, 2020 WL 3867207, applicant in this post-conviction filing asserts that his counsel was ineffective for failing to present mitigation evidence at sentencing. He alleges that this omission would have resulted in not only a more meaningful and tailored sentence, but also a lesser one. A ruling from this Court addressing the issues in *Harris* and any potential retroactivity of that decision would certainly be beneficial for lower courts in their application of [La.Code Crim.P.] art. 930.8. However, this case presents an inadequate vehicle to do so. Specifically, the applicant fails to show a *prima facie* case of ineffective assistance at sentencing, thereby distinguishing this matter from *Harris* and *State v. Robinson*, 19-1330 (La. 11/24/20), 2020 WL 6883289 (defendant sentenced to life imprisonment as a fourth felony habitual offender for a marijuana conviction; court found defendant made a sufficient showing that his attorney failed to argue for a downward departure from the mandatory minimum sentence as a habitual offender).

Notably, in *State v. Robinson*, 19-1330 (La. 11/24/20), 304 So.3d 846, a per curium opinion decided before *Marcus Harris*, 331 So.3d 321, the supreme court granted the writ application of Mr. Robinson, reversed the decision of the court of appeal, and remanded the matter to the district court to reconsider its ruling in light of *Harris*. In remanding, the court noted that Mr. Robinson had presented a *prima facie* claim of ineffective assistance of counsel at sentencing, meriting an evidentiary hearing on the claim. There was no consideration of the retroactive application of *Harris* therein, as acknowledged by Justice Crichton in his concurrence in *Marcus Harris*, 331 So.3d 321.

In considering whether the *Harris* decision is retroactive as to Respondent's post conviction claim here, we turn to the retroactivity analysis of the U.S. Supreme Court as set forth in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989), which was later discussed by our supreme court in *State v. Reddick*, 21-1893 (La. 10/21/22), 351 So.3d 273, holding that the unanimous jury verdict requirement for all felony

4

criminal jury convictions as per *Ramos v. Louisiana*, 590 U.S. —, 140 S.Ct. 1390 (2020), was not retroactive.

In 1992, Louisiana adopted *Teague*'s multi-step framework to determine whether new rules of constitutional criminal law will be applied retroactively to cases on collateral review in Louisiana. *State ex rel. Taylor v. Whitley*, 606 So. 2d 1292, 1297 (La. 1992) (noting that the considerations of finality recognized in *Teague* are "equally applicable in state proceedings as well as federal proceedings").

In *Danforth v. Minnesota*, 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008), the Court clarified that states could give greater retroactive effect to new rules in the state post-conviction context than what the Supreme Court affords in the federal habeas context. *Id.* at 282, 128 S.Ct. 1029 ("[T]he *Teague* decision limits the kinds of constitutional violations that will entitle an individual to relief on federal habeas, but does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed 'nonretroactive' under *Teague*."). This makes sense, as the concerns of comity and federalism that informed *Teague* are not present when a state court is reviewing a case on state collateral review. The Supreme Court itself recognized this tension in *Danforth*, explaining that the federal interest in uniformity

> does not outweigh the general principle that States are independent sovereigns with plenary authority to make and enforce their own laws as long as they do not infringe on federal constitutional guarantees. The fundamental interest in federalism that allows individual States to define crimes, punishments, rules of evidence, and rules of criminal and civil procedure in a variety of different ways - so long as they do not violate the Federal Constitution - is not otherwise limited by any general, undefined federal interest in uniformity.

552 U.S. at 280, 128 S.Ct. 1029. The Supreme Court also pointed out: "If anything, considerations of comity militate in favor of allowing state courts to grant habeas relief to a broader class of individuals than is required by *Teague*." *Id.* at 279-80, 128 S.Ct. 1029.

In this sense, *Danforth* made clear that *Teague* provides a floor for when a new rule of criminal law must be applied retroactively, with a state nonetheless free to adopt its own broader test for requiring the retroactive application of a new federal or state constitutional rule. *See id.* at 289-291, 128 S.Ct. 1029 ("A decision by this Court that a new rule does not apply retroactively under *Teague* does not imply that there was no right and thus no violation of that right at the time of trial - only that no remedy will be provided *in federal habeas courts*.") (emphasis added). Eight years after *Danforth*, in *Montgomery v. Louisiana*, 577 U.S. 190, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), the Supreme Court

5

confirmed that state courts, like federal courts "must give retroactive effect to new substantive rules of constitutional law." *Id.* at 198, 136 S.Ct. 718.

Particularly pertinent to this case, in *Edwards*, —— U.S. ——, 141 S.Ct. 1547, 209 L.Ed.2d 651, the Supreme Court held that *Ramos* does not apply retroactively to cases on federal habeas review, as it was not a watershed rule of criminal procedure falling within *Teague*'s second exception. 141 S.Ct. at 1559. The Court reasoned that the rule announced in *Ramos* was similar to rules announced in earlier cases, which were likewise "momentous and consequential" and "fundamentally reshaped criminal procedure throughout the United States," but were not found to be retroactive. *Id.* The Supreme Court pointed to decisions in which it declined to retroactively apply "momentous" rules, including *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (finding a constitutional right to a jury trial in a state criminal case); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (remedying intentional discrimination in the jury selection process); and *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (restricting use of hearsay evidence against criminal defendants pursuant to the Sixth Amendment).

The Supreme Court, however, did not end its analysis there. The Court noted that because it had never found a new rule to fit within *Teague*'s watershed exception, the exception was "moribund" and "retain[ed] no vitality." *Edwards*, 141 S.Ct. at 1560. It then held: "New procedural rules do not apply retroactively on federal collateral review." *Id.* at 1560. Nevertheless, the Court made clear: "The *Ramos* rule does not apply retroactively on *federal* collateral review. States remain free, if they choose, to retroactively apply the jury-unanimity rule as a matter of state law in state post-conviction proceedings." *Id.* at 1559 n.6 (emphasis in original) (citing *Danforth*, 552 U.S. at 282, 128 S.Ct. 1029).

In short, Supreme Court jurisprudence now provides that this Court must apply *all* new rules to cases on direct review (pursuant to *Griffith*) and must apply *all* new substantive rules to cases on collateral review (pursuant to *Teague* and *Montgomery*). The only choice remaining for states is whether and how to apply new rules of criminal procedure to cases on state collateral review.

. . . .

As an initial matter, we disagree with respondent that the rule announced in *Ramos* qualifies as watershed. The Supreme Court, which developed, articulated, and defined the scope of the watershed exception, found that the ruling did not apply retroactively. In *Edwards*, the Court noted that many other cases significant to criminal defendants, which were "momentous and consequential" just like the rule in *Ramos*, were not found to be retroactive. Though decided before

6

*Teague*, the Court first pointed to *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), in which the Court found a constitutional right to a jury trial in a state criminal case - a "broader jury right" than that in *Ramos*. Yet the *Duncan* right was found not to be retroactive in *DeStefano v. Woods*, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), and the Court found no "principled basis for retroactively applying the subsidiary *Ramos* jury-unanimity right" when it declined to find the broader right retroactive. *Edwards*, 141 S.Ct. at 1558. Likewise, respondent cannot rely upon the original meaning of the Sixth Amendment to assert retroactivity, because in *Whorton v. Bockting*, 549 U.S. 406, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007), the Court found the new rule announced in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) was not retroactive, and that decision relied on the Sixth Amendment to restrict the use of hearsay evidence against criminal defendants. Finally, the Court addressed respondent's argument that the *Ramos* rule prevents racial discrimination, which distinguishes it from other cases and favors watershed status. But in *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), the Supreme Court found the rule announced in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) was not retroactive, and *Batson* "revolutionized day-to-day jury selection by holding that state prosecutors may not discriminate on the basis of race when exercising individual peremptory challenges." *Edwards*, 141 S.Ct. at 1559.

The Supreme Court explained:

> The Court's decisions in *Duncan*, *Crawford*, and *Batson* were momentous and consequential. All three decisions fundamentally reshaped criminal procedure throughout the United States and significantly expanded the constitutional rights of criminal defendants. One involved the jury-trial right, one involved the original meaning of the Sixth Amendment's Confrontation Clause, and one involved racial discrimination in jury selection. Yet the Court did not apply any of those decisions retroactively on federal collateral review. *Ramos* is likewise momentous and consequential. But we see no good rationale for treating *Ramos* differently from *Duncan*, *Crawford*, and *Batson*. Consistent with the Court's long line of retroactivity precedents, we hold that the *Ramos* jury-unanimity rule does not apply retroactively on federal collateral review.

*Edwards*, 141 S.Ct. at 1559. We agree with the Supreme Court here - if *Duncan*, *Crawford*, and *Batson* were not deemed to be retroactive, neither should *Ramos*. The district court erred in finding otherwise.

Similarly, though respondent urges us to find that Louisiana has a distinct or broader interpretation of watershed under *Teague* than that of the Supreme Court, we decline to do so. This state has never

7

departed from *Teague* by finding a rule of criminal procedure applies retroactively in state collateral proceedings where the Supreme Court found it was not retroactive in federal habeas proceedings. In other words, every time the Supreme Court has examined whether a rule of criminal procedure is retroactive, it found it was not; this state's courts have mirrored those holdings, and we are not persuaded that a departure is warranted here.

Though we disagree with the respondent's watershed analysis, we also decline to adopt in full the state's proposal that we declare no rule of criminal procedure can ever be retroactive in Louisiana. Instead, as noted above, we exercise our authority under *Danforth* to retain the entirety of the *Teague* approach, as adopted in *Taylor*, with one exception: replacing the "moribund" watershed exception for new rules of criminal procedure with a consideration of factors that more comprehensively take into account the totality of concerns that inform retroactivity. These criteria include (i) the purpose to be served by the newly-announced rule, (ii) the extent of reliance on the previous rule, and (iii) the effect on the administration of justice of a retroactive application of the new rule. Using these factors *only* for retroactivity analysis of new rules of criminal procedure, while retaining the structure of *Teague* as adopted in *Taylor*, provides courts with the flexibility to develop state law solutions to state-specific problems, in the state collateral context.

*Reddick*, 351 So.3d at 276-77 and 280-81 (footnotes omitted).

Looking to the steps of the analysis set forth in *Reddick*, we begin with the first step, i.e., the nature of the right at stake. It is clear that the availability of sentencing-related review in the post conviction relief process is of significant importance. On the other hand, it is arguably much less important than the unanimous jury right considered in *Ramos*, which bears directly on the determination of a defendant's guilt or innocence. Further, it is of no greater importance than those also discussed by the supreme court in *Reddick*, including the constitutional right to a jury trial in a state criminal case as per *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444 (1968), the Sixth Amendment restriction of the use of hearsay evidence against criminal defendants as per *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), and the constitutional prohibition against state prosecutors to discriminate on the basis of race when exercising individual peremptory challenges

8

as per *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). *See Reddick*, 351 So.3d 273. This is particularly true as reviewing a sentence through the lens of an ineffective assistance of counsel claim on collateral review is essentially a second opportunity for sentence review.

As to the second factor, the extent of reliance on the previous rule, we consider that *Melinie*, 665 So.2d 1172, reigned in the jurisprudence for at least two decades, denying such claims on post conviction review.

As for the third factor, the effect that retroactive application of *Harris* would have on the administration of justice, we find that treating *Harris* as retroactive could have an impact on the administration of justice in the state. *Reddick*, 351 So.3d 273, made the same determination regarding *Ramos*, 140 S.Ct. 1390, stating that the retroactive application of that case would require the State to relitigate the cases of hundreds of defendants, if not more, years after the original trials. While the sentencing-related matters at issue would not require picking new juries, the same types of problems that the court in *Reddick* noted could still arise, such as missing victims and family members who have constitutional rights of their own pursuant to La.Const. art. I, § 25. In addition, witnesses directly involved in the claim of ineffective assistance of counsel, including the very counsel at issue, may well not be available or have little or no recall of the events facilitating such a proceeding if it is to be conducted years after the original sentence. While allowing such claims may only affect post conviction relief applications currently in the system, the problems inherent with litigating such claims as set forth above is very real and problematic.

Applying the rationale of *Reddick* to the case at hand, we find that the decision in *Harris*, 340 So.3d 845, while providing a new interpretation of constitutional law as to the right to make a claim for ineffective assistance of counsel at sentencing on

9

post conviction review, does not apply retroactively to Respondent's claim. Her sentence became final in 1997, and her claim for post conviction relief thereon has long past prescribed by the then three year period provided for in La.Code Crim.P. art. 930.8. The trial court erred in concluding otherwise.

Respondent further suggests that the state constitution requires that she be allowed to proceed with her claim, citing the document's "Access to Courts" provision: "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." La.Const. art. 1, § 22. However, Respondent cites no jurisprudence to support her position. The general language of this constitutional provision does not shed light on the retroactivity issue.

Finally, Respondent suggests her claim is also viable as a motion to correct an illegal sentence. This assertion is incorrect. Unless a motion points to an illegal sentencing term, it is not reviewable as a motion to correct an illegal sentence under La.Code Crim. P. art 882. *State v. Brown*, 22-483 (La.App. 3 Cir. 11/16/22), 353 So.3d 919, *writ denied*, 22-1791 (La. 5/2/23), __ So.3d __.

### DECREE

The Respondent's conviction and sentence have been final since 1997; therefore, the application is facially untimely, pursuant to La.Code Crim.P. art 930.8. The trial court's April 22, 2022 ruling that *State v. Harris*, 340 So.3d 845, applies retroactively is in error and is not supported by the jurisprudence. Thus, the application does not qualify for the exception to untimeliness set forth in La.Code Crim.P. art. 930.8(A)(2). The ruling of the trial court is vacated, and the matter remanded for further proceedings in accordance with this opinion.

### WRIT GRANTED AND MADE PEREMPTORY

10