# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-461

**STATE OF LOUISIANA**

**VERSUS**

**DAVID A. NELSON**

\*\*\*\*\*\*\*\*\*\*

ON REVIEW FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 34884-09
HONORABLE KENDRICK J. GUIDRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR

## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Van H. Kyzar, and Charles G. Fitzgerald, Judges.

## WRIT GRANTED AND MADE PEREMPTORY. REVERSED.

**Stephen C. Dwight**
**District Attorney**
**14th Judicial District**
**John E. Turner**
**Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF/APPLICANT:**
    **State of Louisiana**

**Hardell Ward**
**Promise of Justice Initiative**
**1024 Elysian Fields Ave.**
**New Orleans, LA 70117**
**(504) 529-5955**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
    **David A. Nelson**

**Jamila Johnson**
**Promise of Justice Initiative**
**1024 Elysian Fields Ave.**
**New Orleans, LA 70117**
**(504) 529-5955**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
    **David A. Nelson**

**Madeleine Vidger**
**Promise of Justice Initiative**
**1024 Elysian Fields Ave.**
**New Orleans, La 70117**
**(504) 529-5955**
**COUNSEL FOR DEFENDANT RESPONDENT:**
    **David A. Nelson**

**KYZAR, Judge.**

The State of Louisiana seeks review of the trial court's decision granting Defendant/Relator's application for post-conviction relief, ruling that *Ramos v. Louisiana*, 590 U.S.___, 140 S.Ct. 1390 (2020), retroactively applied to Relator's March 22, 2012 conviction for manslaughter as a "watershed" exception of criminal procedure. For the reasons herein set forth, we grant the writ and make it peremptory, reversing the trial court's decision and dismissing Relator's application for post-conviction relief as being untimely.

## FACTS AND PROCEDURAL HISTORY

Relator, David A. Nelson, was tried for second degree murder, in violation of La.R.S. 14:30.1. On March 22, 2012, by a 10-2 vote, the jury found Relator guilty of the responsive verdict of manslaughter, in violation of La.R.S. 14:31. After the trial court sentenced Relator to thirty years at hard labor, this court and the supreme court affirmed the conviction and sentence on appeal. *See State v. Nelson*, 13-70 (La.App. 3 Cir. 10/9/13) (unpublished opinion),[1] *writ denied*, 13-2606 (La. 4/17/14), 138 So.3d 626.

Relator sought post-conviction relief in January 2015, alleging that he was denied a fair trial due to the jury foreman being a paralegal at the law firm which represented the victim's family in a related civil matter along with two claims of ineffective assistance of counsel against his trial counsel and one claim of ineffective assistance of appellate counsel. The trial court denied the application without a hearing, and both this court and the supreme court denied Relator's subsequent writ applications. *See State v. Nelson*, 15-173 (La.App. 3 Cir. 5/6/15) (unpublished opinion), *writ denied*, 15-1003 (La. 3/24/16), 187 So.3d 995 (per curiam). The

---

[1]This case may be found at 2013 WL 5539336.

supreme court noted in its per curiam that Relator had fully litigated his application and exhausted his right to state collateral review.

On April 8, 2021, Relator filed a "Second or Subsequent Uniform Application for Postconviction Relief." Specifically, Relator contended that his "conviction was obtained in violation of the Constitution of the United States (La. C. Cr. P. art. 930.3(1)), and that his application is timely under 930.8(2)." Relator's application is based upon the Supreme Court's decision in *Ramos v. Louisiana*, 590 U.S.___, 140 S.Ct. 1390 (2020), which held the United States Constitution requires that a criminal conviction be supported by a unanimous jury verdict and that the Fourteenth Amendment extends that requirement to state courts. On May 27, 2021, the State filed "State's Opposition to Petitioner's Application for Post Conviction Relief," contending Relator's application was procedural barred as untimely and Relator could not prove *Ramos* was retroactive to his case in light of *Edwards v. Vannoy*, ___ U.S. ___, 141 S.Ct. 1547 (2021), which denied retroactive application of *Ramos* on federal collateral review.

On June 25, 2021, a hearing on Relator's application for post-conviction relief was held. Following argument from both parties, the trial court granted Relator's application for post-conviction relief stating that it found *Ramos* to be retroactive to Nelson's final conviction as a "watershed rule in Criminal Procedure" under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989). The trial court then granted a stay in the case, anticipating appellate review, stating "someone's going to have to make a decision about my ruling later. So, there's a stay in this case."

The State now seeks review of the trial court's ruling, assigning three assignments of error: (1) the trial court erred in finding Relator's application to be timely, (2) the trial court erred in finding *Ramos* was retroactively applicable to

Relator, and (3) the trial court erred in granting Relator's application for post-conviction relief.

## DISCUSSION

The State's first two assignments of error are that the trial court erred in finding Relator's application for post-conviction relief (PCR) was timely and that *Ramos* applied retroactively to Relator's case. The third assignment of error is generally that the trial court erred in granting Relator's application for PCR. The issues are intrinsically intertwined and thus we address them together. If *Ramos* applies retroactively to Relator, then his application for PCR is timely; if *Ramos* is not retroactive, Relator's filing is untimely, and the trial court erred in granting the PCR application, ordering a new trial. As previously noted, the supreme court has already found that Relator has exhausted his right to apply for post-conviction relief unless he can show an exception to La.Code Crim.P. art. 930.8. *See Nelson*, 187 So.3d at 996. Relator's PCR application alleged it was timely filed under La.Code Crim.P. art. 930.8(A)(2), which allows for an untimely application if:

> The claim asserted in the petition is based upon a final ruling of an appellate court establishing a theretofore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactively applicable to his case, and the petition is filed within one year of the finality of such ruling.

The ruling in *Ramos* was issued on April 20, 2020, and Relator filed his instant PCR application on April 8, 2021. Accordingly, if *Ramos* applies retroactively to Relator, his application would be timely under La.Code Crim.P. art. 930.8(A)(2). Therefore, this court must determine whether *Ramos* has retroactive application to the collateral review of his conviction. We conclude that it does not.

In our analysis, we must look to the cases of import and their relevant holdings in determining the correct outcome of this issue: *Teague*; *Danforth v. Minnesota*, 552 U.S. 264, 128 S.Ct. 1029 (2008); *Ramos*; *Edwards*; and *State ex rel. Taylor v.*

3

*Whitley*, 606 So.2d 1292 (La.1992), *cert. denied*, 508 U.S. 962, 113 S.Ct. 2935 (1993).

In *Teague*, the Supreme Court was called upon to determine whether its ruling in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692 (1975), dictated that a petit jury must represent a fair cross section. Without addressing that issue, however, the Supreme Court adopted a new standard for determining whether a rule applies retroactively on federal collateral review. In the process, the Court noted it had been inconsistent in how it determined retroactivity, sometimes deciding on retroactivity at the time it rendered a ruling and sometimes waiting until a subsequent defendant argued he should receive the benefit of the rule.

The Court, after discussing its previous use of the standard set forth in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731 (1965), adopted a modified version of a standard previously proposed by Justice Harlan:

> Dissatisfied with the *Linkletter* standard, Justice Harlan advocated a different approach to retroactivity. He argued that new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review. See *Mackey v. United States,* 401 U.S. 667, 675, 91 S.Ct. 1160, 1164, 28 L.Ed.2d 404 (1971) (opinion concurring in judgments in part and dissenting in part); *Desist* [*v. United States*,] 394 U.S. [244], at 256, 89 S.Ct. [1030], at 1037 [(1969)] (dissenting opinion).

> In *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), we rejected as unprincipled and inequitable the *Linkletter* standard for cases pending on direct review at the time a new rule is announced, and adopted the first part of the retroactivity approach advocated by Justice Harlan. We agreed with Justice Harlan that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." 479 U.S., at 322, 107 S.Ct., at 713. We gave two reasons for our decision. First, because we can only promulgate new rules in specific cases and cannot possibly decide all cases in which review is sought, "the integrity of judicial review" requires the application of the new rule to "all similar cases pending on direct review." *Id.,* at 323, 107 S.Ct., at 713. We quoted approvingly from Justice Harlan's separate opinion in *Mackey, supra,* 401 U.S., at 679, 91 S.Ct., at 1173:

> " 'If we do not resolve all cases before us on direct review in light of our best understanding of governing constitutional principles, it is difficult to see why we should so adjudicate any case at all. . . . In truth, the Court's assertion of power to disregard current law in adjudicating cases before us that have not already run the full course of appellate review is quite simply an assertion that our constitutional function is not one of adjudication but in effect of legislation.' " 479 U.S., at 323, 107 S.Ct., at 713.

> Second, because "selective application of new rules violates the principle of treating similarly situated defendants the same," we refused to continue to tolerate the inequity that resulted from not applying new rules retroactively to defendants whose cases had not yet become final. *Id.*, at 323–324, 107 S.Ct., at 713–714 (citing *Desist, supra,* 394 U.S., at 258–259, 89 S.Ct., at 1038–1039 (Harlan, J., dissenting)). Although new rules that constituted clear breaks with the past generally were not given retroactive effect under the *Linkletter* standard, we held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." 479 U.S., at 328, 107 S.Ct., at 716.

*Teague*, 489 U.S. at 303-05.

> The Court went on to note:

> Justice Harlan identified only two exceptions to his general rule of nonretroactivity for cases on collateral review. First, a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Mackey,* 401 U.S., at 692, 91 S.Ct., at 1180. Second, a new rule should be applied retroactively if it requires the observance of "those procedures that . . . are 'implicit in the concept of ordered liberty.' " *Id.,* at 693, 91 S.Ct., at 1180 (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937) (Cardozo, J.)).

*Id*. at 307.

The Court ultimately adopted "Justice Harlan's view of retroactivity for cases on collateral review. Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id*. at 310.

In *Taylor*, the supreme court was called upon to rule on the retroactivity of the Supreme Court's ruling in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328 (1991).[2] In the process, the Louisiana Supreme Court expressly adopted the *Teague* analysis:

> However, we have yet to consider the issue of retroactivity on collateral review in light of *Teague*. We now do so, and adopt the *Teague* standards for all cases on collateral review in our state courts.
>
> In doing so, we recognize that we are not bound to adopt the *Teague* standards. However, we find the *Linkletter* test, generally followed by our courts in the past, is vague and leads to the possibility of inconsistent results. Further, we find the consideration of finality in criminal proceedings, so well enunciated by Justice Harlan in *Desist* and *Mackey,* is equally applicable in state proceedings as well as federal proceedings.

*Taylor*, 606 So.2d at 1296-97. Furthermore, the supreme court expressly stated "we now adopt Justice Harlan's views on retroactivity, as modified by *Teague* and subsequent decisions, for all cases on collateral review in our state courts." *Id*. at 1297.

In *Danforth*, the defendant sought state post-conviction relief based on a claim the admission of the victim's taped interview with law enforcement was a violation of the Sixth Amendment in light of the Supreme Court's ruling in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004). The Supreme Court overruled the Minnesota Supreme Court's finding that a state court could not give a Supreme Court ruling any greater retroactivity than that announced by the federal courts under *Teague*:

> In sum, the *Teague* decision limits the kinds of constitutional violations that will entitle an individual to relief on federal habeas, but does not in any way limit the authority of a state court, when reviewing

---

[2]Therein, the Supreme Court held that a jury charge in the defendant's murder trial that instructed that "to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a 'grave uncertainty' and an 'actual substantial doubt,' and stated that what was required was a 'moral certainty' that the defendant was guilty," permits a degree of proof below the "beyond a reasonable doubt" standard constitutionally required by the Due Process Clause of the Fourteenth Amendment. *Id*. at 329-330.

its own state criminal convictions, to provide a remedy for a violation that is deemed "nonretroactive" under *Teague*.

*Danforth*, 552 U.S. at 282.

In *Ramos*, the Supreme Court took up the issue of whether the Sixth Amendment to the United States Constitution required a criminal defendant to be convicted by a unanimous jury and whether the Fourteenth Amendment incorporated that right against the states. The Court ultimately abrogated *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628 (1972), which had held that a non-unanimous jury conviction in state court did not violate the United States Constitution and found that the Sixth Amendment, as incorporated against the states by the Fourteenth Amendment, required that all criminal convictions be obtained by a unanimous jury verdict. As Mr. Ramos's case was on direct appeal, the Court opted not to decide the issue of retroactive application of the unanimous jury requirement.

In *Edwards*, the issue of retroactive application was brought squarely before the Supreme Court by a defendant convicted of armed robbery, rape, and kidnapping in 2007 who sought to have the *Ramos* ruling applied to his case on federal collateral review. The Court, after a thorough analysis of *Ramos* under the *Teague* framework, found that *Ramos* had announced a new rule of procedural law that did not satisfy the "watershed" exception set out in *Teague* and was therefore not retroactively applicable on federal collateral review. Furthermore, the *Edwards* court modified the *Teague* framework by completely eliminating the "watershed" exception:

> Continuing to articulate a theoretical exception that never actually applies in practice offers false hope to defendants, distorts the law, misleads judges, and wastes the resources of defense counsel, prosecutors, and courts. Moreover, no one can reasonably rely on an exception that is non-existent in practice, so no reliance interests can be affected by forthrightly acknowledging reality. It is time—probably long past time—to make explicit what has become increasingly apparent to bench and bar over the last 32 years: New procedural rules do not apply retroactively on federal collateral review. The watershed

7

exception is moribund. It must "be regarded as retaining no vitality." *Edwards*, 141 S.Ct. at 1560.

Despite eliminating the "watershed" exception and declaring *Ramos* was not retroactive on federal collateral review, the *Edwards* court noted in footnote number six that states could still apply *Ramos* retroactively on state law grounds in light of *Danforth*. Having discussed briefly the cases of import, we now turn to the arguments presented by Relator to the trial court.

The State contends this court should interpret the *Taylor* opinion as an adoption of *Teague* and all of its future progeny. The State argues that *Edwards* is directly applicable as a progeny of *Teague*, adopted by the Louisiana Supreme Court in *Taylor*, wherein the supreme court stated, "we now adopt Justice Harlan's views on retroactivity, as modified by *Teague* and subsequent decisions, for all cases on collateral review in our state courts." *Taylor*, 606 So.2d at 1297. Accepting the State's argument would mean the State of Louisiana no longer recognizes the "watershed exception" as it was eliminated by the Supreme Court in *Edwards*. However, we note that at the time the supreme court issued the *Taylor* opinion, three cases had already been decided by the Supreme Court which modified *Teague* by clarifying the standard: *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212 (1990); *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257 (1990); and *Sawyer v. Smith*, 497 U.S. 227, 110 S.Ct. 2822 (1990). The *Taylor* court recognized and discussed *Butler*, *Saffle*, and *Sawyer*. As noted in *Taylor*, the Supreme Court in *Butler* established that a "new rule" under *Teague* was one that was not dictated by precedent. In *Saffle*, the Court stated the following relative to the *Butler* definition of a new rule: "Under this functional view of what constitutes a new rule, our task is to determine whether a state court considering Parks' claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule Parks seeks was

8

required by the Constitution." 494 U.S. at 488. Finally, in *Sawyer*, the Court addressed the second *Teague* exception:

> It is thus not enough under *Teague* to say that a new rule is aimed at improving the accuracy of trial. More is required. A rule that qualifies under this exception must not only improve accuracy, but also " 'alter our understanding of the *bedrock procedural element*' " essential to the fairness of a proceeding.

497 U.S. at 242.

The *Taylor* court's statement that it was adopting Justice Harlan's views "as modified by *Teague* and subsequent decisions" may have simply been an adoption of the *Teague* standard as it stood at the time of the *Taylor* opinion, as modified or extended by *Butler*, *Saffle*, and *Sawyer*, not the broad interpretation as propounded by the State. We cannot be so bold as to extend *Taylor* beyond the narrower interpretation.

On the other hand, Relator's PCR application contends *Edwards* should not be followed to determine the retroactivity of *Ramos* for state collateral review. In essence, Relator argues that in light of *Danforth*, Louisiana courts may ignore the fact the *Edwards* court subjected *Ramos* to the test laid out in *Teague*, found *Ramos* was not retroactive, and ultimately modified *Teague* to remove the possibility of retroactive application of a new procedural rule. We decline do so in reaching our decision here.

The trial court, in finding *Ramos* to be retroactively applicable to state collateral review, held that it was following *Ramos* and *Teague*: "In citing the exception, I find this a watershed rule in Criminal Procedure." We find that the trial court erred in its reasoning. Although the trial court declared *Ramos* to be a watershed rule under *Teague*, the court failed to provide any legal reasoning for how it presumedly applied the same *Teague* analysis as the Supreme Court and came to the opposite conclusion as to whether *Ramos* met the watershed exception. In

9

*Edwards*, the Court extensively discussed the potential for the federal retroactivity of *Ramos* and determined that it did not so qualify.

> Having determined that *Ramos* announced a new rule requiring jury unanimity, we must consider whether that new rule falls within an exception for watershed rules of criminal procedure that apply retroactively on federal collateral review.
>
> This Court has stated that the watershed exception is "extremely narrow" and applies only when, among other things, the new rule alters "our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton* [*v. Bockting*], 549 U.S. [406,] at 417–418, 127 S.Ct. 1173 (internal quotation marks omitted).
>
> In the abstract, those various adjectives—watershed, narrow, bedrock, essential—do not tell us much about whether a particular decision of this Court qualifies for the watershed exception. In practice, the exception has been theoretical, not real. The Court has identified only one pre-*Teague* procedural rule as watershed: the right to counsel recognized in the Court's landmark decision in *Gideon v. Wainwright*, 372 U.S. 335, 344–345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). See *Whorton*, 549 U.S. at 419, 421, 127 S.Ct. 1173. The Court has never identified any other pre-*Teague* or post-*Teague* rule as watershed. None.
>
> Moreover, the Court has flatly proclaimed on multiple occasions that the watershed exception is unlikely to cover any more new rules. Even 32 years ago in *Teague* itself, the Court stated that it was "unlikely" that additional watershed rules would "emerge." 489 U.S. at 313, 109 S.Ct. 1060 (plurality opinion). And since *Teague*, the Court has often reiterated that "it is unlikely that any such rules have yet to emerge." *Whorton*, 549 U.S. at 417, 127 S.Ct. 1173 (internal quotation marks and alteration omitted); see also *Beard v. Banks*, 542 U.S. 406, 417, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004); *Summerlin*, 542 U.S. at 352, 124 S.Ct. 2519; *Tyler*, 533 U.S. at 667, n. 7, 121 S.Ct. 2478; *Graham v. Collins*, 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993); *Sawyer*, 497 U.S. at 243, 110 S.Ct. 2822; *Butler v. McKellar*, 494 U.S. 407, 416, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990).
>
> Consistent with those many emphatic pronouncements, the Court since *Teague* has rejected *every* claim that a new procedural rule qualifies as a watershed rule. For example, in *Beard v. Banks*, 542 U.S. at 408, 124 S.Ct. 2504, the Court declined to retroactively apply the rule announced in *Mills v. Maryland*, 486 U.S. 367, 384, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), that capital juries may not be required to disregard certain mitigating factors. In *O'Dell* v. *Netherland*, 521 U.S. 151, 153, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997), the Court refused to retroactively apply the rule announced in *Simmons v. South Carolina*, 512 U.S. 154, 156, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), that a capital defendant must be able, in certain circumstances, to

inform the sentencing jury that he is parole ineligible. In *Lambrix v. Singletary*, 520 U.S. at 539–540, 117 S.Ct. 1517, the Court declined to retroactively apply the rule announced in *Espinosa v. Florida*, 505 U.S. 1079, 1082, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (*per curiam*), that sentencers may not weigh invalid aggravating circumstances before recommending or imposing the death penalty. In *Sawyer v. Smith*, 497 U.S. at 229, 110 S.Ct. 2822, the Court refused to retroactively apply the rule announced in *Caldwell v. Mississippi*, 472 U.S. 320, 323, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), which prohibited a death sentence by a jury led to the false belief that responsibility for the sentence rested elsewhere.

The list of cases declining to retroactively apply a new rule of criminal procedure extends back long before *Teague* to some of this Court's most historic criminal procedure decisions. For example, in *Johnson v. New Jersey*, 384 U.S. 719, 721, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the Court declined to retroactively apply *Miranda v. Arizona*, 384 U.S. 436, 444–445, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which required that police inform individuals in custody of certain constitutional rights before questioning them. And in *Linkletter v. Walker*, 381 U.S. at 639–640, 85 S.Ct. 1731, the Court refused to retroactively apply *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which incorporated the Fourth Amendment exclusionary rule against the States.

Edwards seeks to distinguish *Ramos* from the long line of cases where the Court has declined to retroactively apply new procedural rules. Edwards emphasizes three aspects of *Ramos*: (i) the significance of the jury-unanimity right; (ii) *Ramos*'s reliance on the original meaning of the Constitution; and (iii) the effect of *Ramos* in preventing racial discrimination in the jury process.

But Edwards's attempts to distinguish *Ramos* are unavailing because the Court has already considered and rejected those kinds of arguments in prior retroactivity cases.

*First*, Edwards emphasizes the significance of the jury-unanimity right for criminal defendants. But that argument for retroactivity cannot be squared with the Court's decisions in *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and *DeStefano v. Woods*, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) (*per curiam*). In *Duncan*, the Court repudiated several precedents and ruled that a defendant has a constitutional right to a jury trial in a state criminal case. 391 U.S. at 149–150, 154–155, 88 S.Ct. 1444. Notwithstanding the extraordinary significance of *Duncan* in guaranteeing a jury trial and expanding the rights of criminal defendants, the Court in *DeStefano* declined to retroactively apply the jury right. 392 U.S. at 633, 88 S.Ct. 2093; see also *Summerlin*, 542 U.S. at 356–358, 124 S.Ct. 2519 (relying on *DeStefano* and rejecting retroactivity of jury right recognized in *Ring v. Arizona*, 536 U.S. 584, 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)). We cannot discern a

principled basis for retroactively applying the subsidiary *Ramos* jury-unanimity right when the Court in *DeStefano* declined to retroactively apply the broader jury right itself.

*Second*, Edwards stresses that *Ramos* relied on the original meaning of the Sixth Amendment. But that argument for retroactivity is inconsistent with *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Whorton v. Bockting*, 549 U.S. 406, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007). In *Crawford*, the Court relied on the original meaning of the Sixth Amendment's Confrontation Clause to overrule precedent and restrict the use of hearsay evidence against criminal defendants. 541 U.S. at 60–69, 124 S.Ct. 1354. Notwithstanding *Crawford*'s reliance on the original meaning of the Sixth Amendment, the Court in *Whorton* declined to retroactively apply *Crawford*. 549 U.S. at 421, 127 S.Ct. 1173.

*Third*, Edwards says that *Ramos* prevents racial discrimination by ensuring that the votes of all jurors, regardless of race, matter in the jury room. But that argument for retroactivity cannot prevail in light of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (*per curiam*). In *Batson*, the Court overruled precedent and revolutionized day-to-day jury selection by holding that state prosecutors may not discriminate on the basis of race when exercising individual peremptory challenges. 476 U.S. at 92–93, 96–98, 106 S.Ct. 1712. Nonetheless, the Court in *Allen* declined to retroactively apply *Batson*. 478 U.S. at 261, 106 S.Ct. 2878; see also *Teague*, 489 U.S. at 295–296, 109 S.Ct. 1060 (reaffirming *Allen*).

The Court's decisions in *Duncan*, *Crawford*, and *Batson* were momentous and consequential. All three decisions fundamentally reshaped criminal procedure throughout the United States and significantly expanded the constitutional rights of criminal defendants. One involved the jury-trial right, one involved the original meaning of the Sixth Amendment's Confrontation Clause, and one involved racial discrimination in jury selection. Yet the Court did not apply any of those decisions retroactively on federal collateral review. *Ramos* is likewise momentous and consequential. But we see no good rationale for treating *Ramos* differently from *Duncan*, *Crawford*, and *Batson*. Consistent with the Court's long line of retroactivity precedents, we hold that the *Ramos* jury-unanimity rule does not apply retroactively on federal collateral review.

*Edwards*, 141 S.Ct. at 1556-59 (footnote omitted).

Relator argues that such a *Teague* analysis should turn out differently under Louisiana state law based upon *Brown v. Louisiana*, 447 U.S. 323, 100 S.Ct. 2214 (1980). In *Brown*, the Supreme Court retroactively applied its ruling in *Burch v.*

12

*Louisiana*, 441 U.S. 130, 99 S.Ct. 1623 (1979), that it was unconstitutional to allow non-unanimous convictions in trials with a six-person jury. However, the *Brown* ruling not only pre-dates the *Teague* analysis, but it is one of the cases cited by the *Teague* court as exemplifying the need for a single method of analyzing retroactivity. *See Teague*, 489 U.S. at 299-300. Additionally, the *Edwards* opinion addressed *Brown* in footnote 5, noting the Justices who provided the decisive opinion in *Brown* only found *Burch* applicable to cases on direct review.

Rather, we rely on the Supreme Court's *Teague* analysis in *Edwards* and conclude that the *Ramos* decision has no retroactive effect on collateral review of Relator's 2012 conviction in Louisiana. The trial court erred in its decision to the contrary. In doing so, the trial court failed to provide any explanation for why its analysis of *Ramos* under *Teague* reached the opposite conclusion as the Supreme Court did for federal collateral review. We cannot fathom any different conclusion than that of the United States Supreme Court that *Ramos* does not satisfy the "watershed" exception set out in *Teague.* As such, Relator has failed to show a valid exception to the time limitation in La.Code Crim.P. art. 930.8 which would allow filing of an otherwise untimely application for post-conviction relief.

An appellate court may raise the procedural bar of untimeliness on an application for post-conviction relief even when the trial court has considered the merits of the application. *See State ex rel. Glover v. State*, 93-2330, 94-2101, 94-2197 (La. 9/5/95), 660 So.2d 1189, *abrogated in part on other grounds by State ex rel. Olivieri v. State*, 00-172, 00-1767 (La. 2/21/01), 779 So.2d 735, *cert. denied*, 533 U.S. 936, 121 S.Ct. 2566 (2001), *and cert. denied*, 534 U.S. 892, 122 S.Ct. 208 (2001). Accordingly, Relator's application for post-conviction relief is denied as untimely because *Ramos* does not apply retroactively to Relator's conviction. In so concluding, the State's final assignment of error is rendered moot.

13

**DECREE**

For the reasons set forth herein, we reverse the decision of the trial court and deny Relator's application for post-conviction relief as having been untimely filed.

**WRIT GRANTED AND MADE PEREMPTORY.  REVERSED.**